(No. 78178.—

MT. ZION STATE BANK & TRUST, Guardian of the Estate of Dale Beavers, Jr., a Minor, Appellee, v. CONSOLIDATED COMMUNICATIONS, INC., Appellant.

*Opinion filed November 2, 1995.—Rehearing denied January 29, 1996.*

HARRISON, J., dissenting.

Heyl, Royster, Voelker & Allen (Karen L. Kendall, of Peoria, and Frederick P. Velde, of Springfield, of counsel), for appellant.

Thomas F. Londrigan, of Londrigan, Potter & Randle, P.C., and Timothy J. Londrigan, of Londrigan & Londrigan, all of Springfield, for appellee.

Bruce Robert Pfaff, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE FREEMAN delivered the opinion of the court:

On June 9, 1991, six-year-old Dale Beavers, Jr. (plaintiff), suffered injury from a near-drowning in a swimming pool located on the property at 407 West First Street in Taylorville, Illinois. Mt. Zion State Bank & Trust, as guardian of the plaintiff's estate, filed a second-amended complaint in the circuit court of Christian County against defendants, Consolidated Communications, Inc. (Consolidated) (counts I and II), and Erlbacher Materials, Inc. (counts III and IV), seeking damages for injuries sustained as a result of the incident. Plaintiff

subsequently dismissed counts III and IV from the complaint.

In lieu of an answer, Consolidated filed a motion to dismiss the complaint for failure to state a cause of action. (735 ILCS 5/2—615(a) (West 1992).) The trial court granted Consolidated's motion and plaintiff appealed. The appellate court reversed (267 Ill. App. 3d 402), and we granted Consolidated's petition for leave to appeal (145 Ill. 2d R. 315). The Illinois Trial Lawyers Association was granted leave and filed a brief *amicus curiae* in support of plaintiff. (See 134 Ill. 2d R. 345(a).) We now reverse the appellate court and affirm the circuit court's dismissal order.

## THE COMPLAINT

Count I of the complaint attempts to state a cause of action for "ordinary negligence." Specifically, the complaint alleges that Consolidated erected, owned, operated, and maintained a telephone "utility pedestal" at or near the northwest corner of property located at 407 West First Street in Taylorville. The pedestal did not serve that property; Consolidated is neither the owner nor "legal occupier" of that property, and the pedestal is there without easement or other legal right.

Consolidated erected the pedestal adjacent to a "protective fence" surrounding an outdoor swimming pool and playground equipment at 407 West First Street. At all relevant times, the swimming pool and playground equipment located in the backyard of the First Street property were clearly visible.

Further, the complaint alleges that on June 9, 1991, at approximately 7:15 p.m., Dale Beavers, Jr., was playing in a portable wading pool in an adjacent back yard (417 West First Street). At that time, the swimming pool at 407 West First Street was totally enclosed by a "protective fence," which was gated and locked. Dale Beavers was a minor child, six years of age, and legally

incapable of exercising due care for his own safety. Dale used Consolidated's "utility pedestal" to climb over the "protective fence" and gain access to the 407 West First Street swimming pool.

Finally, count I alleges that Consolidated breached its duty of reasonable care to plaintiff by erecting and maintaining a pedestal of a size and shape which could be used by small children to defeat the "protective fence" and gain access to a swimming pool which presented an obvious hazard to small children. The negligent positioning and maintenance of the pedestal was "a proximate cause of entry into the swimming pool and the drowning injury" suffered by Dale Beavers.

Count II of the complaint realleges those facts alleged in count I, alternatively alleges that Consolidated was the legal occupier of the 407 West First Street property, and that its "utility pedestal" serviced that property. Couched in language intended to bring it within the principles enunciated in *Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, the complaint additionally alleges the following. Consolidated's placement of the pedestal next to a "protective fence" created a dangerous condition by providing small children with access to a swimming pool. Consolidated knew or should have known that the dangerous condition was likely to cause drowning injury to children under the age of reason, *i.e.*, seven years of age, because of their inability to appreciate the risk involved. The pool was so attractive, alluring and tempting to minor children of tender age as to constitute an inducement to them to play in it. The burden of remedying the dangerous condition by moving the pedestal away from the protective fence was slight compared to the serious risk involved.

## MOTION TO DISMISS

Regarding count I of the complaint, Consolidated asserted that it owed no duty of care to the minor plaintiff.

Relying on the open and obvious danger doctrine, Consolidated argued that on June 9, 1991, the plaintiff child was old enough to roam unattended and, as such, the risk of drowning was obvious.

Further, Consolidated asserted that even if it owed a duty, its actions were not the proximate cause of the plaintiff's injury, because plaintiff was not injured either on or by the utility pedestal. In support, Consolidated argued that the minor plaintiff lived across the street and down the block from the owners of the pool. The minor utilized the telephone pedestal to climb over a 47-inch high fence, walked across the neighbor's yard to the far side of an above-ground swimming pool, stepped onto a light housing attached to the side of the pool, and climbed over the pool wall into the water.

Regarding count II of the complaint, Consolidated asserted that if the complaint purported to allege negligence under the "attractive nuisance doctrine," such doctrine had been abolished in Illinois. If, however, Count II was not brought under the "attractive nuisance doctrine," the count was repetitious of count I and should be dismissed.

## DISCUSSION

A section 2—615 motion should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the plaintiff to recover. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 280.) In ruling on such a motion, only those facts apparent from the face of the pleadings, matters of which the court can take judicial notice, and judicial admissions in the record may be considered. (3 R. Michael, Illinois Practice § 27.4 (1989) (citing cases).) On review of an order granting a section 2—615 motion, all well-pleaded facts and all reasonable inferences from them are taken as true. *First National Bank v. Mutual Trust Life Insurance Co.* (1988), 122 Ill. 2d 116, 118; *Mein v. Masonite Corp.* (1985), 109 Ill. 2d 1, 7.

Plaintiff here attempts to state a cause of action for negligence. To properly state such a cause, a plaintiff must plead that the defendant owed a duty of care to the plaintiff, that the defendant breached that duty, and that the breach was the proximate cause of the plaintiff's injuries. *Thompson v. County of Cook* (1993), 154 Ill. 2d 374, 382; *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.

A duty is an obligation to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 554.) Whether such a duty exists is a question of law, the determination of which must be resolved by the court. (*O'Hara v. Holy Cross Hospital* (1990), 137 Ill. 2d 332, 337.) If no duty exists, it is axiomatic that no recovery can occur.

Generally, a landowner owes no duty of care to a trespassing adult except not to willfully or wantonly injure him. Infants have no greater right than do adults to go upon the land of another. Their minority, in and of itself, imposes no duty upon an occupier of land to either expect them or prepare for their safety. (*Kahn*, 5 Ill. 2d at 625; see also 740 ILCS 130/3 (West 1992) (Premises Liability Act).) The responsibility for a child's safety lies primarily with his or her parents, whose duty it is to see that the child is not placed in danger. *Driscoll v. Rasmussen Corp.* (1966), 35 Ill. 2d 74, 79.

In cases involving personal injuries to children, we no longer rely upon the attractive nuisance doctrine to assess liability. Instead, the customary rules of ordinary negligence cases apply. (*Kahn*, 5 Ill. 2d at 624.) As in the case of adult trespassers, an owner or occupier of land owes no duty to a trespassing child except not to willfully or wantonly injure him. The "no duty" rule is not, however, without exception. Since *Kahn* and its progeny, a duty is imposed upon an owner or other

person in possession and control of the premises to exercise due care to remedy a dangerous condition on the land or to otherwise protect children from injury resulting from it where: (1) the owner or occupier of the land knew or should have known that children habitually frequent the property; (2) a defective structure or dangerous condition was present on the property; (3) the defective structure or dangerous condition was likely to injure children because they are incapable, because of age and maturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition was slight when compared to the risk to children. (See *Kahn*, 5 Ill. 2d at 625; see also Restatement (Second) of Torts § 339, at 197 (1965) (liability to trespassing children for artificial conditions on the land).) Consistent with the Restatement, in Illinois, it is the reasonable foreseeability of harm which now determines liability in negligence actions involving injury to children. *Cope v. Doe* (1984), 102 Ill. 2d 278, 286.

*Kahn* has not been read, however, to impose a *per se* rule of liability for dangerous conditions. "Even if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions." (*Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 326.) While certainly there are latent dangers that a child would not appreciate due to his minority, a possessor of land is free to rely upon the assumption that any child old enough to be allowed at large by his parents will appreciate certain obvious dangers or at least make his own intelligent and responsible choice concerning them. W. Keeton, Prosser & Keeton on Torts § 59, at 407 (5th ed. 1984).

The exception for obvious dangers is "not merely a matter of contributory negligence or assumption of risk,

but of lack of duty to the child." (W. Keeton, Prosser & Keeton on Torts § 59, at 409 (5th ed. 1984); *Corcoran*, 73 Ill. 2d at 326; see also Pub. Act 83—1398, eff. September 12, 1994 (amending 740 ILCS 130/2 (Premises Liability Act) (duty of reasonable care does not include a duty to warn or to take reasonable steps to protect from conditions on the premises that are open and obvious)).) The rationale for the "no duty" rule is that, because children, like adults, are expected to avoid dangers which are obvious, there is no reasonable foreseeable risk of harm. *Cope*, 102 Ill. 2d 278.

In Illinois, obvious dangers include fire, drowning in water, or falling from a height. (*Corcoran*, 73 Ill. 2d at 327; *Cope*, 102 Ill. 2d at 287; see also Restatement (Second) of Torts § 339, Comment *j*, at 203 (1965); W. Keeton, Prosser & Keeton on Torts § 59, at 407 (5th ed. 1984).) In passing, we note that cases decided in other jurisdictions applying the attractive nuisance doctrine have held that because the dangers of a swimming pool are obvious, the pool could not, in itself, be the attraction sought to impose liability. See 65 C.J.S. *Negligence* § 63(101) (1966) (citing cases); see also *Englund v. Englund* (1993), 246 Ill. App. 3d 468 (above-ground swimming pool held to be open and obvious danger).

Parenthetically, although the attractive nuisance doctrine has been abandoned in Illinois, the element of attraction yet has some utility in the duty determination. That an attraction or allurement existed on the land is significant insofar as it indicates that the trespass should have been anticipated. See *Kahn*, 5 Ill. 2d at 625; W. Keeton, Prosser & Keeton on Torts § 59, at 404 (5th ed. 1984); see also 65 C.J.S. *Negligence* § 63(89) (1966).

Having stated the applicable law, we now consider whether plaintiff has stated a cause of action upon which relief may be granted. Incidentally, although all

pleadings are to be liberally construed (735 ILCS 5/2—603(c) (West 1992)), a complaint must, nonetheless, state a cause of action by allegation of facts. The failure to do so cannot be aided by any principle of liberal construction. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 421; see also *People ex rel. Fahner v. Carriage Way West, Inc.* (1981), 88 Ill. 2d 300, 308.) Of particular note in the complaint before us is the complete absence of any facts which would support plaintiff's conclusory characterization of the fence surrounding the pool as protective.

In point of fact, in her discovery deposition, Patricia VanHooser, owner of the 407 West First Street property, testified that installation of the fence preceded the family's purchase of the pool by several years. The purpose of the fence, which ran parallel to the alley, was to create a "play yard" for the VanHooser children, to keep the VanHooser children in the yard and to keep animals out of the garden. VanHooser further testified that she and her husband had only discussed changing the height of the fence if necessary to comply with any future proposed fencing ordinance. Otherwise, they never discussed changing the fence for safety purposes.

Further, in that regard, Officer Sheila Nation of the Taylorville police department testified in discovery that at the time of this incident, the Village of Taylorville had no ordinance requiring fencing for above-ground swimming pools.

Notwithstanding the conclusory nature of plaintiff's allegations, we consider the sufficiency of the complaint to otherwise state a cause of action. Critical to the survival of plaintiff's negligence action is the existence of a duty owed him by Consolidated.

Count II of plaintiff's complaint attempts to state a cause of action against Consolidated as an owner/occupier of land. In an attempt to satisfy the requirements of *Kahn,* plaintiff alleges that placement of the

pedestal next to the fence created a dangerous condition by providing small children access to a swimming pool.

A duty which would not be imposed under ordinary negligence principles will be imposed only where an owner or party in possession or control of premises "knows or should know that children frequent the premises *and* if the cause of the child's injury was a dangerous condition on the premises." (Emphasis added.) (*Corcoran*, 73 Ill. 2d at 326, citing *Kahn*, 5 Ill. 2d 614.) If both these prerequisites are satisfied, it is deemed that harm is sufficiently foreseeable for the law to require an owner or occupier of land to remedy the condition. *Corcoran*, 73 Ill. 2d at 326.

Initially we notice the absence of facts to support plaintiff's conclusion that Consolidated knew or should have known that children frequented the premises. Even had the factual allegations on that requirement been sufficient, count II, nevertheless, fails to satisfy the dangerous condition requirement of *Kahn*.

A dangerous condition is one which is likely to cause injury to children generally who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks. In such an instance, there is a duty to remedy the condition.

The swimming pool, as plaintiff alleges, is an obvious danger. Because Consolidated could reasonably expect that plaintiff appreciated the risk associated with the pool, no duty arose as a result of its existence.

Ordinarily, neither a utility pedestal nor a fence poses any particular danger, and no injury is alleged to have occurred as a result of plaintiff's contact with either. There are no facts to suggest that placement of the pedestal next to the fence rendered the danger of the pool less obvious. Further, there were no facts alleged to suggest that the condition of the pool itself was, for any reason, made less obviously dangerous. (See *Ward v.*

*K mart Corp.* (1990), 136 Ill. 2d 132, 149-50 (holding that where an invitee's attention is distracted, obviousness of danger is not conclusive in determining duty of possessor); see also Restatement (Second) of Torts § 339, Comment *j*, at 203 (1965) (obvious danger rule inapplicable to conditions so hidden as not to be readily visible, or where distracting influence makes it likely that child will not discover or appreciate it); but see Pub. Act 83—1398, eff. September 12, 1994 (amending 740 ILCS 130/2 (Premises Liability Act) (duty of reasonable care does not include duty to warn or protect against obvious dangers)).) The fact that these three instrumentalities existed together is not sufficient to demonstrate that they created a dangerous condition. See *Logan v. Old Enterprise Farms, Ltd.* (1990), 139 Ill. 2d 229, 234-35; see also *Driscoll*, 35 Ill. 2d 74.

Plaintiff has failed to show that the pedestal, the fence and the pool interacted to create a latent dangerous condition. We conclude, therefore, that harm to plaintiff was not sufficiently foreseeable to impose a duty upon Consolidated. Consequently, under the principles enunciated in *Kahn*, count II fails to state a cause of action.

Count I of plaintiff's complaint is intended to state a cause of action for "ordinary negligence" against a nonowner, nonlegal occupier of land. Plaintiff contends that because Consolidated is neither the owner nor "legal occupier" of the property on which the pedestal was erected, premises liability concepts do not apply.

Plaintiff posits that although the owners of the 407 West First Street property owed no duty to plaintiff for the obvious danger presented by the swimming pool, Consolidated's duty as a trespasser is different. Given Consolidated's trespasser status, it should not be able to avail itself of the "special protections" available to owners and "legal occupiers" of land, such as the obvious

danger exception, to defeat liability. Plaintiff insists that Consolidated owed him a duty to exercise ordinary care in the placement of its utility pedestal.

Consolidated responds that its status upon the land is not relevant to the liability determination. Consolidated maintains that it owed plaintiff no duty to protect against the hazards of an obvious condition, the swimming pool.

Again, since this court's decision in *Kahn*, 5 Ill. 2d at 622-24, liability for injuries to children has been evaluated under the principles of ordinary negligence. Thus, plaintiff's insistence that Consolidated should be required to exercise "ordinary care" requires Consolidated to exercise no greater care than is already due. Nevertheless, plaintiff seeks an "ordinary negligence" analysis, the application of which would preclude operation of the obvious danger exception.

Plaintiff purports to find support for his position in *Johnson v. City of St. Charles* (1916), 200 Ill. App. 184, and *Knyal v. Illinois Power Co.* (1988), 169 Ill. App. 3d 440. In both *Johnson* and *Knyal*, the trespassing defendants attempted to defeat liability for injury to the plaintiffs by asserting the plaintiffs' trespasser status.

As we have stated previously, a landowner owes no duty of care to a trespassing adult except not to willfully or wantonly injure him. With the exception of the existence of latent dangerous conditions, the rule, since *Kahn*, is generally the same for trespassing children. The rationale for this immunity is that in a civilization based on private ownership, it is considered a socially desirable policy to permit a person use of his land in his own way, without the burden of watching for and protecting those who come there without permission or right. W. Keeton, Prosser & Keeton on Torts § 58 (5th ed. 1984); accord Restatement (Second) of Torts § 381, Comment *c*, at 285 (1965).

A trespasser on the land who injures another trespasser, however, does not enjoy that same immunity. He "is subject to liability to others whom he should recognize as likely to be on the land, as servants of the possessor or as invitees, licensees, or trespassers, for physical harm caused to them by any act done, activity carried on, or condition created while upon the land by the trespasser which he should recognize as involving an unreasonable risk of causing such harm to them." Restatement (Second) of Torts § 381, at 285 (1965). *Cf.* Restatement (Second) of Torts § 162, at 291-92; Comment *f*, at 293 (1965) (trespasser is subject to liability to possessor for any harmful act regardless of whether his conduct is intentionally wrongful, reckless or negligent).

Consistent with these rules, the court in both *Johnson* and *Knyal* held that a landowner's immunity from liability to trespassers was not available as between trespassers. The rule is, simply and narrowly, that the defense of nonliability for injury to a trespasser is personal to the owner of the premises trespassed on and does not inure to the benefit of strangers to the title or to a trespasser. In neither case did the court even suggest that the rules generally applicable in premises liability cases were inapplicable when the person sought to be charged by a trespassing plaintiff is himself a trespasser.

Other than his misinterpretation of *Johnson* and *Knyal*, plaintiff offers no basis to support a "different duty" requirement, and we can perceive of no valid reason. As *Kahn* teaches, regardless of the status of the creator of a dangerous condition, the test for liability is foreseeability of harm.

In *Kahn*, a minor was injured on a pile of lumber which had been delivered and placed on the property by a lumber company. The lumber company, asserting that it had no control over the property, sought to avoid liability on that basis.

This court rejected the lumber company's argument, holding that the *creator* of certain conditions, dangerous and hazardous to children because of their inability to appreciate the risks, must be held to a certain standard of conduct for the protection of such children. (*Kahn*, 5 Ill. 2d at 622.) "Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his act ***." (*Kahn*, 5 Ill. 2d at 622.) The test for liability was whether the lumber company, in the exercise of ordinary care, could *reasonably have anticipated* the likelihood that children would climb onto the lumber and would be injured if the lumber was not securely piled.

Plaintiff would no doubt argue that *Kahn* is distinguishable because the lumber company, unlike Consolidated, had permission to be on the property. We would disagree and further offer the Restatement as supporting authority. Where a trespasser, who knows or should know that others also trespass upon the land, creates an unreasonably dangerous condition which harms the other trespasser, the one trespasser is subject to liability to the other *under the same conditions as though he had created the condition in a neutral place.* (Restatement (Second) of Torts § 333, Comment *b*, at 184-85 (1965).) We understand the Restatement position to mean that ordinary negligence principles apply to a trespasser's duty to another trespasser. See also *Rahn v. Beurskens* (1966), 66 Ill. App. 2d 423, 430 (test of liability, regardless of the status of the creator of the dangerous condition, is foreseeability of harm); 6 Ill. Personal Injury § 607.10 (1989); 13 Ill. Jur. *Personal Injury & Torts* § 31:72 (1994).

As both *Kahn* and the Restatement make clear, as between a trespassing defendant and a trespassing plaintiff, ordinary principles of negligence apply and

foreseeability of harm is the test for liability. Given that, there is absolutely no reason, either in law or in logic, to preclude operation of the obvious danger exception. That a trespassing defendant is wrongly upon land is a matter the reconciliation of which is between him and the owner of the land. As between trespassing parties, it is of no particular consequence to either that the other is upon the land without legal right. Regardless of their status on the land, they owe to each other a duty to exercise reasonable care.

We conclude that Consolidated, even if it was a trespasser to the land, owed plaintiff a duty to exercise ordinary care. Thus, consistent with *Kahn*, whether it had a duty to protect plaintiff against injury from the pool turned on whether such injury was reasonably foreseeable. We reiterate, obvious dangers present no foreseeability of harm, and thus no duty.

Incidentally, in response to plaintiff's "Request for Admissions," Consolidated admitted that it obtained no easement or a permit from VanHooser, the owner of the property located at 407 West First Street and objected to plaintiff's request to admit the absence of a legal right to place the pedestal on the 407 West First Street property. Additionally, Consolidated denied that it had not obtained an easement, permit or other legal right from the City of Taylorville to place the pedestal upon or along any city right of way. Further, Consolidated denied that its pedestal encroached upon the boundaries of property owned by VanHooser.

Admissions made pursuant to a request under our Rule 216 are tantamount to judicial admissions, and as such are taken as true. (See *City of Champaign v. Roseman* (1958), 15 Ill. 2d 363; see also *F.J. Pechman, Inc. v. Oldham* (1980), 86 Ill. App. 3d 1018; 3 R. Michael, Illinois Practice § 27.4 (1989).) Unless otherwise waived, Consolidated's denial appears to negate plaintiff's alle-

gation that Consolidated is on the property without legal right. Further, we note that there is authority for the proposition that the rule of nonliability may be successfully invoked by one who is in possession of the land by virtue of an easement therein. See 65 C.J.S. *Negligence* § 63(21) (1966).

Having resolved the "different duty" issue, we consider the sufficiency of count I of the complaint to state a cause of action for negligence. Count I alleges that Consolidated was "negligent by erecting and maintaining a pedestal of a size and shape which could be used by small children to defeat the protective fence and gain access to a swimming pool which presented an obvious hazard to small children."

As we have already concluded, the swimming pool was an obvious danger which imposed no duty. Given that, it would be incongruous to conclude that the pedestal, in combination with the fence, which merely provided access to the pool, gave rise to a duty. Consequently, count I also fails to state a cause of action for negligence.

Plaintiff additionally argues that to find that Consolidated owed no duty is to "foster a rule that a child below the age of reason is better able to recognize and appreciate danger" than is a utility company.

The issue in cases involving obvious dangers, like fire, water or height, is not whether the child does in fact understand, but rather what the possessor may reasonably expect of him. (See W. Keeton, Prosser & Keeton on Torts § 59, at 407 (5th ed. 1984); 2 M. Polelle & B. Ottley, Illinois Tort Law § 16.11 (2d ed. 1994).) The test is an objective one, grounded partially in the notion that parents bear the primary responsibility for the safety of their children. Stated again, where a child is permitted to be at large, beyond the watchful eye of his parent, *it is reasonable to expect* that that child can appreciate

certain particular dangers. See *Booth v. Goodyear Tire & Rubber Co.* (1992), 224 Ill. App. 3d 720, 725 (subjective understanding not considered when risk is obvious); see also *Salinas v. Chicago Park District* (1989), 189 Ill. App. 3d 55.

## MOTION TAKEN WITH THE CASE

As a final matter we must dispose of plaintiff's motion to declare Consolidated's proximate cause argument waived. In his motion, plaintiff asserts that the absence of proximate cause was not the basis for the trial court's dismissal of the complaint. Further, plaintiff asserts, in the petition for leave to appeal, Consolidated's argument was confined to the issue of duty; no issue was presented on proximate cause. Thus, plaintiff maintains, Consolidated has waived any argument concerning the absence of proximate cause. Consolidated timely filed objections to the motion.

A section 2—615 motion attacks the sufficiency of the complaint. On appeal from an order granting such a motion, we review the complaint, *de novo*, as though it were before the trial court. Thus, whether Consolidated properly preserved any argument is a limitation on neither the nature nor the parameters of our review. (See *Ross v. City of Chicago* (1988), 168 Ill. App. 3d 83, 88.) However, in light of our determination that Consolidated owed plaintiff no duty of care, we need not reach Consolidated's proximate cause argument. Plaintiff's motion is denied as moot.

## CONCLUSION

Plaintiff's complaint fails to state a cause of action for negligence. The circuit court's dismissal of the complaint was proper. We therefore reverse the judgment of the appellate court and affirm the circuit court.

*Appellate court reversed;*
*circuit court affirmed.*

JUSTICE HARRISON, dissenting:

The majority opinion confirms something that we should have known already: in Illinois, it is better to be a telephone company than to be a little boy. In *In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233, this court decreed that phone companies can ruin a customer's business with impunity. Today the court gives them license to maim our children. I did not agree with the first of these rulings, and I certainly cannot join in the second.

The majority's analysis is based on the proposition that a child who is "old enough to be allowed at large by his parents" is old enough to appreciate the risks posed by "obvious dangers," such as swimming pools. What my colleagues forget is that the child here was not "at large" and was not old enough to be "allowed at large." According to the pleadings, he was just a six-year-old boy out playing in the backyard.

Under Illinois law, children under the age of seven cannot be guilty of contributory negligence. (*Mort v. Walter* (1983), 98 Ill. 2d 391, 395.) That being so, I fail to see, as a matter of law, how little Dale can possibly be expected to have comprehended and avoided the risks posed by his neighbor's above-ground pool. Not only is such a position irreconcilable with our rules on negligence, it defies common experience.

To a six-year-old, the danger posed by an above-ground pool is far from obvious. When my colleagues assert a contrary position, I see that it has been too long since they have been responsible for the care of small children, or even been in their company. To impute to such children the judgment and maturity the majority expects reminds me of the words once used by the Michigan Supreme Court in similar circumstances: "All of this is straight from outer space. It is pure fantasy. It is unrelated to life on this earth." *Elbert v. City of Saginaw* (1961), 363 Mich. 463, 480, 109 N.W.2d 879, 887.

The average six-year-old child cannot possibly know that an above-ground pool is apt to be deeper than he is tall, that there is no shallow end where he can stand safely, and that passersby will not be able to see him over the sides of the pool if he founders in the water. This is more than idle speculation on my part. According to figures compiled by the American Academy of Pediatrics, drowning is second only to automobile accidents in causing accidental death among children younger than 15. More than half of those drownings, the organization estimates, occur in swimming pools. (Cleveland Plain Dealer, July 22, 1993, at 8C.) If the risks posed by swimming pools were really so evident, why would our children be losing their lives with such frequency?

There is something else disturbing about the majority's analysis. When my colleagues hold that a child allowed at large by his parents should be able to appreciate the danger posed by a swimming pool, what they really mean is that if Dale was not old enough to know that his neighbor's pool was dangerous, his parents should have watched him more carefully. Thus, according to them, Dale's mother and father must also share in the blame.

I regard this contention as profoundly offensive. If there is anyone in this tragedy who is blameless, it is Dale's parents. Based on the pleadings, there is no basis for concluding that they deviated in any way from the applicable standard of care. If parents cannot allow their six-year-olds out in the backyard without having to hover over them every second to protect them from some new hazard a local utility has decided to create, we are subjecting them to a level of diligence they cannot possibly sustain.

The culpable party here is the phone company, not Dale's mother and father. To say that it could not fore-

see the risk of injury defies comprehension. As a result of the high number of deaths and injuries caused to children by swimming pools each year, the importance of maintaining fences to protect children from unsupervised access to swimming pools has become well established. Such fences are now typically required by local and county ordinances where, as here, homeowners have installed backyard pools. In Chicago and most of its suburbs, for example, any pool that is five or more feet deep must have a fence around it and a self-latching gate. Chicago Tribune, July 21, 1993, at 1.

While we do not know if Taylorville had such a requirement, no great sophistication is necessary to appreciate that in a suburban neighborhood, the very reason people place fences around their pools is to help keep local children away so they do not fall in and injure themselves when an adult is not present, as Dale did here. The risk of injury was patent, and it was totally ignored by the company. When they installed the pedestal next to the fence, they defeated the critical protection it provided just as surely as if they had sent a worker over to hold out his hands and give little Dale a boost over the top. That is surely something for which they should be made to answer.

In urging a contrary position, the majority relies on various evidentiary materials. This is improper in the context of a motion to dismiss under section 2—615 (735 ILCS 5/2—615 (West 1992)) for failure to state a cause of action. The only question presented by such a motion is whether sufficient facts are contained in the pleadings which, if established, would entitle the plaintiff to relief. (*Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 488.) Because a section 2—615 motion is based on the pleadings rather than on the underlying facts, affidavits, the products of discovery, documentary evidence not incorporated into the pleadings as exhibits,

testimonial evidence or other evidentiary materials may not be considered by the court in making its ruling. (See *Barber-Colman Co. v. A & K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 1068.) A cause of action should be dismissed on the pleadings only if it is clearly apparent that no set of facts can be proven which will entitle a plaintiff to relief. *Illinois Graphics Co.*, 159 Ill. 2d at 488.

Ultimately, what is most absurd about the majority's opinion is that it requires children to behave more sensibly than utility companies. My colleagues say that young children should know of the dangers of water, height and fire, but they have no similar expectation of a multimillion dollar corporation. Telephone companies are evidently free to act as irresponsibly as they want, as we saw earlier in *In re Illinois Bell Switching Station Litigation* (1994), 161 Ill. 2d 233. There, the phone company lacked the sense to call the fire department when one of its own switching stations was burning down, and still, as here, the majority was able to turn the other way. I, for one, cannot understand this deference. No matter how valuable the service the phone company provides to its customers and shareholders, it is not worth allowing our children to be sacrificed. I therefore dissent.