T.T. *et el.*, Minors, by B.T., their Father and Next Friend, Plaintiffs-Appellants, v. YOUNGIN KIM *et al.*, Defendants-Appellees.

Second District   No. 2—95—0656

Opinion filed February 28, 1996.

12

Robert A. Clifford, Robert P. Sheridan, and Richard L. Pullano, all of Clifford Law Offices, P.C., of Chicago, for appellants.

D. Dean Mauro, of Querrey & Harrow, Ltd., of Waukegan, Julie L. Trester and Michael Resis, both of Querry & Harrow, Ltd., of Chicago, for appellees.

JUSTICE INGLIS delivered the opinion of the court:
This appeal comes from an order of the circuit court of Lake

County granting summary judgment for defendants, Youngin and Grace Kim (the Kims) in a tort action brought by B.T. (plaintiff), individually, and as next friend on behalf of his children T.T. and J.A.T. (minor plaintiffs). Plaintiffs alleged that as a result of the Kims' negligence, the minor plaintiffs injured themselves in the Kims' swimming pool. The circuit court granted the Kims' motion for summary judgment, finding that they owed no duty because the pool was an obvious danger. Plaintiffs timely appeal, contending that the trial court erred in granting summary judgment. We reverse.

This tragic incident occurred on July 5, 1992. T.T. was three years old at the time and sustained minor personal injuries. J.A.T. was five years old and suffered irreversible brain damage. At the time of the accident, the parties were next-door neighbors. The Kims' backyard contained a built-in swimming pool. The backyard was enclosed by a fence with a gate which the Kims kept locked. The Kims were concerned that their young children and other children in the neighborhood would gain access to the pool. The only other entrance to the backyard was through an interior back door which the Kims also kept locked. No children were allowed to enter the backyard without adult supervision. The Kims' children, who were two and four at the time of the incident, were instructed about safety rules with respect to the pool. The minor plaintiffs, who often played with the Kim children, also were warned to stay away from the pool. However, neither the Kims' children nor the minor plaintiffs ever swam in the Kims' pool.

In August 1991, the Kims had the pool winterized. Some of the water in the pool was drained, leveling the water to approximately a foot or a foot and one-half below the concrete deck which surrounded the pool. The pool was covered with a dark green tarp. Mr. Kim stated that the tarp was placed on the concrete deck at each end of the swimming pool and the remainder of the tarp was stretched over the entire pool where water weights were placed on the edges of the tarp to keep it in place. There is no indication in the record how old the tarp was; Mr. Kim did not know where the previous owners had stored the tarp. Between August 1991 and the incident on July 5, 1992, the Kims never tested, inspected, or cleaned the tarp. Further, there is no evidence in the record that the children were instructed as to the dangers of walking or playing on or near the tarp. The tarp was thrown out after the incident.

Testimony taken from the depositions precludes a true description of the tarp at the time of the incident. It is unclear whether the tarp covered the entire pool, whether part of the tarp trailed in the

pool water, or whether the tarp had sagged in the center. However, by July 1992, six inches of water had accumulated on the tarp and the water underneath had become dark, dirty, and filled with leaves and algae. It is not evident whether the water that had accumulated on the tarp covered the whole tarp or only the center of the tarp. A paramedic who assisted in the recovery of J.A.T. stated in his deposition that the tarp covered the northern three-quarters of the swimming pool. According to the paramedic, the southernmost quarter of the tarp appeared to have been pulled or pushed into the water and could not be seen. The pool water was so dirty that the bottom could not be seen.

Around 2 p.m. on July 5, 1992, Mr. Kim went outside to do some gardening and his children accompanied him. He began gardening in his backyard and removed the wire lock from the back gate. When he left the backyard to garden in the front yard, he closed the gate but was unsure whether the gate had closed and latched behind him. He planned on returning, however, so he did not replace the wire lock.

Later that afternoon, while Mr. Kim was gardening in the front yard, Mrs. Kim joined him. Plaintiff, who brought his children with him, went to the Kims' front yard to offer the use of his fertilizer spreader and to visit. Plaintiff and the Kims conversed while the minor plaintiffs played with the Kims' oldest child, Rachel. At some point, Mrs. Kim returned inside her home. Plaintiff also returned home to prepare dinner, leaving his two children playing in front of the Kims' home. Testimony is conflicting concerning the time during which Mrs. Kim was outside. Plaintiff stated that Mrs. Kim was watching the children when he returned home to prepare dinner. Mr. Kim stated that Mrs. Kim was inside their home at that time. In any event, Mr. Kim continued gardening after Mrs. Kim and plaintiff had left, while the children continued to play. Mr. Kim admitted that during this time he was concentrating on his gardening rather than supervising the children. When he completed his gardening in the front yard, Mr. Kim returned to the backyard. There he saw Rachel standing by the pool, and T.T. was lying in the middle of the tarp in the water that had accumulated. Because he could not reach T.T., Mr. Kim used a pool implement to pull her off of the tarp. When Mr. Kim asked Rachel where J.A.T. was, she told him that he was "swimming." Mr. Kim could not remember whether the tarp had been moved, but he could not move the tarp himself because it was too heavy. He did not see J.A.T. so he ran next door to plaintiff's house and rang the bell. When he received no answer, he ran back home and Mrs. Kim called 911.

Emergency medical personnel arrived at the scene within minutes. The paramedic stated that he saw children's shoes by the pool but did not remember how many were there. He also had difficulty finding J.A.T. in the water because of the tarp and the dark water. Approximately 16 minutes had passed from the time Mr. Kim first observed T.T. lying on the tarp until J.A.T. was pulled from the water.

Plaintiffs filed this action alleging that the Kims were negligent in: (1) failing to warn the minor plaintiffs about the dangers of playing in or near the swimming pool; (2) failing to restrict access to the swimming pool; (3) permitting the existence of a dangerous condition whereby the minor plaintiffs could gain access to the swimming pool without an adult's assistance; and (4) failing to keep the swimming pool covered when it was not in use. The Kims filed a motion for summary judgment asserting that they owed no duty to plaintiffs because the condition of the pool was open and obvious. The Kims also asserted that plaintiffs failed to establish the requisite element of causation because there exists no direct evidence as to causation and the true cause of the accident was plaintiff's own failure to supervise his children. Plaintiffs claimed, as they now claim on appeal, that the Kims had a duty under the law to keep their property free from dangerous conditions; and it was the acts and/or omissions of the Kims that caused the minor plaintiffs' injuries. The trial court agreed with the Kims and granted their motion for summary judgment.

We note at the outset that summary judgment is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. *Stevens v. Riley*, 219 Ill. App. 3d 823, 829 (1991). The motion should be granted only if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). In determining the presence of a genuine issue of material fact, the court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Stevens*, 219 Ill. App. 3d at 829. We conduct a *de novo* review of the trial court's decision to grant summary judgment. *Rockford Memorial Hospital v. Department of Human Rights*, 272 Ill. App. 3d 751, 754 (1995).

Plaintiffs contend that the Kims breached a duty owed to plaintiffs. A defendant landowner has a duty to protect children from harm where he knows or should know that young children habitually frequent the property, a dangerous condition is present on the

property, the condition is likely to cause children injury because they are too immature to appreciate the risk involved, and if the expense of protecting children from the dangerous condition is slight compared to the risk of injury. *Kahn v. James Burton Co.*, 5 Ill. 2d 614, 625 (1955). The supreme court has stated that the *Kahn* principle should not be construed to impose a duty on owners and occupiers to remedy conditions which are obvious to children and which the children generally would be expected to appreciate and avoid. *Corcoran v. Village of Libertyville*, 73 Ill. 2d 316, 326 (1978); see also *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110 (1995). "Even if an owner or occupier knows that children frequent his premises, he is not required to protect against the ever-present possibility that children will injure themselves on obvious or common conditions." *Corcoran*, 73 Ill. 2d at 326.

■ Obvious dangers generally include fire, drowning in water, or falling from a height. These dangers are reasonably expected to be fully understood and appreciated by any child of an age to be allowed at large. *Mt. Zion*, 169 Ill. 2d at 116; *Stevens*, 219 Ill. App. 3d at 830. Because children are expected to avoid dangers which are obvious, there is no reasonably foreseeable risk of harm. *Stevens*, 219 Ill. App. 3d at 830. On the other hand, a dangerous condition is one which is likely to cause injury to children generally who, by reason of their age and immaturity, would not be expected to comprehend and avoid the attendant risks. In such an instance, there is a duty to remedy the condition. *Mt. Zion*, 169 Ill. 2d at 117.

Whether a duty exists is a question of law to be determined by the court. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). Thus, our threshold inquiry must be to ascertain whether plaintiff has established the existence of a dangerous condition on the property. *Fuller v. Justice*, 117 Ill. App. 3d 933, 939 (1983).

Plaintiffs contend that the swimming pool on the Kims' property was not an obvious danger because it was concealed by the tarp. Plaintiffs contend that this created a special risk which children could not be expected to avoid.

A majority of the cases in Illinois concerning children who have been injured in water have held that the bodies of water presented obvious dangers to children. See, *e.g., Englund v. Englund*, 246 Ill. App. 3d 468 (1993) (above-ground swimming pool); *Stevens*, 219 Ill. App. 3d at 830-31 (creek partially obscured by weeds); *Wingate v. Camelot Swim Club, Inc.*, 193 Ill. App. 3d 963 (1990) (partially frozen duck pond); *Old Second National Bank v. Aurora Township*, 156 Ill. App. 3d 62 (1987) (flooded ditch).

Those cases which have held that bodies of water presented obvi-

ous dangers to children did not establish that all bodies of water were *per se* obvious dangers. Rather, the bodies of water were found to represent obvious dangers because water was visible and, thus, so was the attendant risk. See, *e.g.*, *Cope v. Doe*, 102 Ill. 2d 278, 289 (1984) (landowner was not liable for death of child who had fallen through ice on pond; minors testified that open water was clearly visible); *Englund*, 246 Ill. App. 3d at 477 (above-ground swimming pool presented a blatantly apparent danger to three-year-old); *Stevens*, 219 Ill. App. 3d at 830 (17$^{1}$/2-month-old child who fell into creek partially hidden by prairie grass was likely to see water either through the grass or over it). But see *Henson v. Ziegler*, 269 Ill. App. 3d 439 (1995) (above-ground swimming pool was not obvious danger to six-year-old).

■ No case in Illinois, however, involved children who were injured in a swimming pool which had been covered by a tarp. We believe that the risks created by the tarp on the swimming pool, under the circumstances of this case, were of a type which children would not be expected to recognize and appreciate. Although the children were told that there was a pool in the Kims' backyard and they were warned not to swim in the pool, there is no evidence that the children were told that the tarp itself could be dangerous. The dark green tarp had covered the pool for approximately nine months. Although the tarp, in and of itself, might not be dangerous, it is plausible that the tarp may have become dangerous due to the leaves, dirt, and water that had accumulated after months of exposure to the natural elements. In addition to the propensity to cause slipping, sliding, and falling that may have been created by the combination of the dirt, leaves, and water that had accumulated on the tarp, children, who by reason of their age and immaturity, conceivably would not understand that the tarp itself might not support them if they ventured onto it. Furthermore, children might not have been able to appreciate that there was water underneath the tarp.

Additionally, the attraction or allurement to play on the tarp is significant insofar as it indicates that the landowner should have foreseen that children would be attracted or allured to the danger. The tarp itself contained only six inches of water. It is unclear where the water was located on the tarp. However, as plaintiffs signify, the attraction to play in a puddle of water is the very sort of thing a four- and five-year-old would enjoy. See *Mt. Zion*, 169 Ill. 2d at 116-17 (although the attractive nuisance doctrine has been abandoned in Illinois, the element of attraction does have some effect on the duty determination); see also *Ward v. K mart Corp.*, 136 Ill. 2d 132, 149-50 (1990) (where an invitee's attention is distracted, obviousness of

danger is not conclusive in determining duty of possessor); Restatement (Second) of Torts § 339, Comment *j*, at 203 (1965) (obvious danger rule inapplicable to conditions so hidden as not to be readily visible, or where distracting influence makes it likely that child will not discover or appreciate it).

The Kims maintain that a finding of duty would create liability for the landowner who attempts to protect injury by covering his pool while the landowner who leaves his pool wide open has no duty whatsoever. We do not believe that a landowner necessarily should be liable for attempting to prevent accidents from occurring. But it is not unreasonable for a landowner to take the steps necessary to safeguard a potentially dangerous condition. Here, there is no indication that the Kims maintained or checked the tarp's condition. The Kims did not clean the tarp or ensure that it covered the pool after it had been exposed to months of snow, ice, and rain. By allowing it to remain in such a condition, a potentially dangerous condition could have developed: one in which, where children are playing nearby, harm could be considered reasonably foreseeable.

In the present case, T.T. was injured on the tarp, not in the pool. It is uncertain whether J.A.T. was injured by the tarp or the water or both. In either event, since a five-year-old and a three-year-old would not appreciate the danger under the above circumstances and the harm caused by the dangerous condition was reasonably foreseeable, we find that the Kims had a duty to maintain the tarp in a reasonably safe condition. Thus, we cannot justify a finding of summary judgment. We find, therefore, that the trial court erred in granting summary judgment for the Kims.

■ The Kims also argue that plaintiff is responsible for the minor plaintiffs' injuries because they were not supervised properly. However, it is unclear from the evidence submitted whether plaintiff was responsible or whether the Kims were responsible for supervising the minor plaintiffs at the time of the incident. Plaintiff stated that Mrs. Kim was watching the children at the time when he returned to his home. He assumed Mrs. Kim would supervise the children as she had done on prior occasions when the minor plaintiffs had played with the Kim children at their home. Mr. Kim apparently was still gardening when he realized that plaintiff was no longer nearby and the children were playing near his home. We are aware of the well-settled principle that the primary responsibility for the injury to young children must be placed on the parents of children or those who are entrusted with their supervision. *Strode v. Becker*, 206 Ill. App. 3d 398, 405 (1991). However, homeowners are not necessarily absolved of all duty to very young children merely

because supervision of young children is generally the responsibility of their parents. *Strode*, 206 Ill. App. 3d at 405. We are only concerned with the existence of a duty owed by the Kims in the first instance, rather than the possible defenses which might be available to them. See *Ward*, 136 Ill. 2d at 144-45 (comparative negligence does not affect the basic duty a defendant owes a plaintiff in negligence cases).

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed, and the caused is remanded for further proceedings.

Reversed and remanded.

McLAREN, P.J., and DOYLE, J., concur.