2016 IL App (2d) 160015
No. 2-16-0015
Opinion filed September 14, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| ROSA PEREZ, Individually and as Independent Administrator of the Estate of Edgar Ivan Fernandez Perez, Deceased, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14-L-104 |
| | ) | |
| STEVE HEFFRON, | ) | Honorable |
| | ) | Dorothy French Mallen, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE ZENOFF delivered the judgment of the court, with opinion.
Justices Jorgensen and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Rosa Perez, the mother of Edgar Ivan Fernandez Perez, appeals from an order

of the circuit court of Du Page County granting summary judgment in favor of defendant, Steve

Heffron, in this wrongful death action arising from Edgar's drowning in defendant's swimming

pool.    We affirm.

¶ 2                             I. BACKGROUND

¶ 3    The following undisputed facts are taken from depositions, photographs, and affidavits in

the record.    On Friday, June 14, 2013, defendant held a yard sale at his home in Bartlett,

Illinois. Miguel Fernandez attended the sale along with his 34-month-old son, Edgar.[1] Miguel's sister, Socorro Fernandez, and their parents ("grandparents") also attended the sale. Socorro's two-year-old granddaughter, Kristy, was with her.

¶ 4    Color photographs show the condition of the front, side, and back yards of defendant's home on that Friday. Items for sale were on the ground and on tables in the front yard. A walkway two pavers wide, which would accommodate single-file pedestrians, led to the backyard through a narrow side yard, bounded on one side by the house and shrubs and on the other by a large aboveground swimming pool. The pool appeared to be constructed of durable material and installed in the yard as a permanent and dominant fixture. Large hoses snaked through and around pool filters and pumps on the side of the pool facing the pedestrian walk. A very narrow strip of lawn separated the pool from the walk. Nothing obstructed a pedestrian on the walk from seeing the pool. A deck with a gate giving access to the pool was adjacent to one side of the pool. Stairs led from the deck down to a back patio area, where items were grouped for sale. A wooden fence with a gate separated the back and front yards.

¶ 5    Defendant had deliberately placed a clothes rack in front of the deck stairs to prevent yard-sale patrons from going onto the deck. According to defendant, on the previous day he ascertained that the deck gate to the swimming pool was latched. On that Friday morning, a blue plastic solar cover, used to heat the water in the pool, covered the entire inner perimeter surface area of the pool. According to defendant, a child standing on the deck looking at the solar cover would not be able to see the water. That Friday morning, defendant again checked the gate, saw that it was closed, and assumed that it was still latched.

---

[1] Edgar is plaintiff's decedent in this litigation.

¶ 6     In the early afternoon, Edgar was playing in defendant's front yard in the company of the Fernandez family and defendant. Defendant told Miguel, Socorro, and the grandparents that there were more items for sale in the backyard. Miguel had Edgar by the hand. Socorro, Kristy, and the grandparents went into the backyard, but Miguel stopped at the gate in the fence, uncertain if he wanted to look at more merchandise.[2] Miguel decided not to follow the others into the backyard. Edgar pulled on him, wanting to go with Socorro, Kristy, and the grandparents. Miguel called to the others to let them know that he was leaving Edgar in their care. They did not hear and did not realize that Edgar was no longer with Miguel. Miguel returned to the front of the house.

¶ 7     While Socorro was looking at the merchandise, Kristy walked away from her. According to Socorro, that was when she noticed the swimming pool. She found Kristy on the deck by the pool. The solar cover was "like a ball floating around," and it covered only a "corner" or a "quarter" of the water. The cover was moving. Socorro did not investigate further, thinking that a filter caused the movement. Socorro, Kristy, and the grandparents returned to the front of the house, where they found Miguel standing in the street by the car, ready to leave. When Miguel asked where Edgar was, Socorro screamed, and she, Miguel, and defendant ran into the backyard. Edgar had drowned in the pool. The police investigation revealed that there was no functioning latch on the pool gate.

¶ 8     Plaintiff filed suit against defendant for wrongful death and survival. The second amended complaint alleged that defendant was negligent in that he failed to install a self-latching pool gate, failed to erect an enclosure making his pool inaccessible to children, and failed to

_____

[2] Miguel's movements and statements were recounted by Socorro at her deposition. Miguel was never deposed, having been deported to Mexico.

warn invitees of the pool's presence.   Each allegation was accompanied by the further allegation that the danger of the water in the pool was concealed by the solar cover.   On September 22, 2015, defendant filed a motion for summary judgment on the grounds that he owed no duty to plaintiff and that the proximate cause of Edgar's death was Miguel's failure to supervise him.   On December 9, 2015, the trial court granted summary judgment in favor of defendant, finding that the pool posed an open and obvious danger, relieving defendant of any duty.   This timely appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10    Plaintiff contends that summary judgment was not appropriate, for the following reasons: (1) the solar cover hid the danger of drowning from Edgar, and neither Miguel nor Socorro knew of the pool's presence; (2) defendant created a "distraction" by cluttering the backyard with merchandise and hiding the stairway entrance to the pool; and (3) the law imposing upon children of tender years the duty to recognize and protect themselves from the danger of drowning is absurd and should be changed.

¶ 11    Summary judgment is a drastic means of disposing of litigation and should be granted only when the right of the moving party is clear and free from doubt.   *Stevens v. Riley*, 219 Ill. App. 3d 823, 829 (1991).   Summary judgment will be granted when the pleadings, depositions, admissions, and affidavits on file show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.   *Stevens*, 219 Ill. App. 3d at 829.   We review *de novo* a trial court's grant of summary judgment.   *Duffy v. Togher*, 382 Ill. App. 3d 1, 7 (2008).

¶ 12    Owners and occupiers of land are not ordinarily required to foresee and protect against injuries resulting from dangerous conditions that are open and obvious.   *Suchy v. City of*

*Geneva*, 2014 IL App (2d) 130367, ¶ 22.   A condition is "open and obvious" where a reasonable person exercising ordinary perception, intelligence, and judgment would recognize both the condition and the risk involved.   *Suchy*, 2014 IL App (2d) 130367, ¶ 22.   Open and obvious dangers include fire, height, and bodies of water and are considered to be apparent to young children.   *Suchy*, 2014 IL App (2d) 130367, ¶ 22.   The legal concept of reasonable foreseeability of injury from drowning in swimming pools takes into account that even young, unsophisticated, or immature people are assumed to appreciate the risks associated with such conditions.   *Bezanis v. Fox Waterway Agency*, 2012 IL App (2d) 100948, ¶ 28.   Where the physical nature of the condition is undisputed, courts can decide whether a danger is open and obvious as a question of law.   *Suchy*, 2014 IL App (2d) 130367, ¶ 22.   Specifically, swimming pools have been held to be open and obvious dangers as a matter of law.   *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill. 2d 110, 118 (1995).   Whether a condition is open and obvious depends not on subjective knowledge but on the objective knowledge of a reasonable person confronted with the same condition.   *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 14.

¶ 13     If a child is too young, mentally or chronologically, to be "at large," the duty to supervise the child so as to protect against obvious risks lies primarily with the accompanying parent. *Stevens*, 219 Ill. App. 3d at 832.   Failure of a parent to supervise his or her child is not foreseeable, and the law does not require a landowner to anticipate negligence on the parent's part and guard against it.   *Englund v. Englund*, 246 Ill. App. 3d 468, 476 (1993).

¶ 14     Plaintiff argues that the open-and-obvious doctrine is inapplicable because the solar cover hid the danger of drowning.   Plaintiff also maintains that neither Miguel nor Socorro knew of the pool's existence.   Although a plaintiff is not required to prove his or her case at summary

judgment, to survive a motion for summary judgment, the plaintiff must present a factual basis that would arguably entitle him or her to a judgment. *Bank of America, N.A. v. Adeyiga*, 2014 IL App (1st) 131252, ¶ 54. Although defendant testified at his deposition that the solar cover overlaid the entire interior surface of the pool in the morning, there is no evidence that it was in the same position when Edgar encountered the pool in the early afternoon. Socorro testified at her deposition that the solar cover was balled up over a "corner" or a "quarter" of the water when she pulled Kristy away from the deck. To infer that Edgar balled up the plastic cover is not reasonable, because of its size. Also, it appears from defendant's deposition testimony that there were other people on the premises.

¶ 15 Socorro testified at her deposition that she first saw the pool when she noticed Kristy on the deck, but she also testified that she had not paid attention to her surroundings as she walked toward the merchandise in the backyard. Because Miguel was not deposed, plaintiff's argument that Miguel did not know of the pool's presence is speculation. Photographs show that the pool was highly visible from the paved walk leading into the backyard and was immediately identifiable as an aboveground swimming pool. A person of ordinary perception in Socorro's position, walking into the backyard, would have immediately seen the pool. See *Sandoval v. City of Chicago*, 357 Ill. App. 3d 1023, 1028 (2005) (open and obvious conditions include those where the condition and risk are apparent to and would be recognized by a reasonable person exercising ordinary perception).

¶ 16 Plaintiff's reliance on *T.T. v. Kim*, 278 Ill. App. 3d 11 (1996), is misplaced. In *T.T.*, the minor plaintiffs were injured on a tarp, in itself dangerous due to accumulated leaves, dirt, and water, that completely covered an in-ground pool. *T.T.*, 278 Ill. App. 3d at 17. This court held that the dangerous tarp was not the type of condition that young children would be expected to

recognize and appreciate. *T.T.*, 278 Ill. App. 3d at 17. Here, there is no evidence that the solar cover either attracted Edgar or injured him. Also, as noted above, there is no evidence that the solar cover completely covered the water in the pool when Edgar encountered it. Further, there is no evidence that the solar cover was in a dangerous condition.

¶ 17 Another case upon which plaintiff relies, *Pasierb v. Hanover Park Park District*, 103 Ill. App. 3d 806 (1981), is also distinguishable. The issue in that case was the sufficiency of the complaint, not summary judgment. *Pasierb*, 103 Ill. App. 3d at 807. The court held that the complaint stated a cause of action for wrongful death where it alleged that the plaintiff's seven-year-old decedent drowned in a creek hidden by snow. *Pasierb*, 103 Ill. App. 3d at 809. The court reasoned that it was foreseeable that a child who played in a park where a water-filled drainage ditch was "completely concealed" from view would encounter the ditch unintentionally and suffer injury. *Pasierb*, 103 Ill. App. 3d at 809. Here, the pool was not hidden from view, and there is no evidence that the water in the pool was hidden when Edgar encountered it. Indeed, when Socorro noticed the pool, three-quarters of the water was visible.

¶ 18 Plaintiff argues that the solar cover made the pool resemble a trampoline rather than a body of water. However, this case is distinguishable from *Duffy v. Togher*, 382 Ill. App. 3d 1 (2008), where a swimming pool presented an optical illusion of depth. In *Duffy*, the plaintiff dove headfirst into the homeowner defendants' pool, sustaining serious injuries. *Duffy*, 382 Ill. App. 3d at 3. The appellate court held that the danger was not open and obvious as a matter of law, because the pool was designed to give the illusion of depth where none existed. *Duffy*, 382 Ill. App. 3d at 9. Here, the aboveground pool looked just like an aboveground pool, with solid walls, hoses, and filters. In common experience, trampolines are not solid, enclosed structures from which hoses run and decks are attached.

¶ 19    If the pool was open and obvious, plaintiff urges that the distraction exception to the open-and-obvious doctrine applies.    There are two exceptions to the open-and-obvious rule: the distraction exception and the deliberate-encounter exception.    *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 88 (2004).    A property owner will owe a duty of care if it is reasonably foreseeable that the plaintiff's attention might be distracted so that he or she would not discover the obvious, dangerous condition.    *Prostran*, 349 Ill. App. 3d at 88.    Plaintiff argues that defendant created a distraction by placing the clothes rack in front of the stairs to the deck and by cluttering his yard with merchandise.    Defendant contends that the distraction exception is inapplicable because it does not relieve a parent from his or her duty to adequately supervise the child.

¶ 20    We agree with defendant that the distraction exception is inapplicable, but for different reasons.    First, the record does not demonstrate the presence of a distraction.    According to the photographs in the record, the clothes rack in front of the deck stairs did not hide the pool.    The photographs show plastic bins stuffed with sale items placed on the ground around the backyard patio area, as well as other items stacked on the lawn very near the pool.    Viewing the photographs, it would be impossible for anyone in the backyard to miss the pool's presence.    Anyone shopping or looking at merchandise that was stacked on the ground in front of the pool would be looking right at the pool.

¶ 21    Second, the record shows that Socorro was not distracted.    She testified at her deposition that, even though she was shopping, she was aware when Kristy walked away from her. Socorro was unaware of Edgar's absence, not because she was distracted with shopping, but because she did not know that Miguel had left Edgar in her care.    Had she known that she was in charge of Edgar, she would have been as attentive to him as she was to Kristy.

¶ 22    The present case boils down to defendant's inability to foresee that Edgar would be unattended.    Edgar was accompanied by his father, aunt, and grandparents.    Through a completely unforeseeable and tragic misunderstanding, Socorro did not hear Miguel say that he was leaving Edgar with her and the grandparents, and Miguel did not realize that Socorro and the grandparents had not heard him.    We are persuaded that this case is similar to *Englund* and *Stevens*, where this court held that it was not foreseeable that the plaintiffs would fail to supervise their children adequately.

¶ 23    In *Englund*, the plaintiff's three-year-old daughter, Lauren, drowned in the defendants' backyard aboveground swimming pool during a party.    *Englund*, 246 Ill. App. 3d at 470.    The plaintiff was seated out of sight from where Lauren was playing in some sand.    *Englund*, 246 Ill. App. 3d at 471.    When the plaintiff caught her two-year-old son running toward the pool deck, she found Lauren drowned inside the pool.    *Englund*, 246 Ill. App. 3d at 471.    The plaintiff sued the defendant homeowners, alleging that they were negligent for failing to supervise the children at the party and for constructing the pool with no self-locking gate. *Englund*, 246 Ill. App. 3d at 472.    The trial court granted summary judgment in favor of the defendants, and this court affirmed, holding that the defendants had no duty to protect Lauren from obvious dangers, especially those that were apparent to Lauren's parents, who undertook her supervision.    *Englund*, 246 Ill. App. 3d at 474.    We emphasized that it was the plaintiff's responsibility to position herself where she could watch Lauren play and that it was not foreseeable that the plaintiff would fail to supervise Lauren adequately.    *Englund*, 246 Ill. App. 3d at 476.    We held that it is more desirable to place the burden of supervision upon parents rather than homeowners.    *Englund*, 246 Ill. App. 3d at 476.

¶ 24    In *Stevens*, the 17-month-old plaintiff, Michelle, fell into a retention pond surrounded by high prairie grass on the defendants' property and was injured.   *Stevens*, 219 Ill. App. 3d at 825-26.   While Michelle's parents were visiting with members of the defendants' family outside the defendants' home, Michelle's mother saw Michelle go inside the house.   *Stevens*, 219 Ill. App. 3d at 826.   However, no one inside the house saw Michelle.   *Stevens*, 219 Ill. App. 3d at 826.   When it became apparent that Michelle was missing, the two families searched the premises.   *Stevens*, 219 Ill. App. 3d at 826.   Michelle was found lying face down in the retention pond.   *Stevens*, 219 Ill. App. 3d at 827.   The plaintiffs sued the defendants, alleging that they failed to exercise ordinary care for Michelle's safety by failing to fence or barricade the water.   *Stevens*, 219 Ill. App. 3d at 828.   The trial court granted summary judgment in the defendants' favor, finding no legal duty.   *Stevens*, 219 Ill. App. 3d at 828.   This court affirmed, noting that the prairie grass around the pond and the pond itself were visible.   *Stevens*, 219 Ill. App. 3d at 830.   Further, the existence and location of the pond were known to Michelle's parents.   *Stevens*, 219 Ill. App. 3d at 831.   We held that the responsibility for a child's safety lies primarily with his or her parents and that a person who is merely in possession and control of the property is not required to indemnify against every possibility of injury.   *Stevens*, 219 Ill. App. 3d at 831.

¶ 25    *Stevens* is indistinguishable from the present case.   As in *Stevens*, Edgar had been under his father's supervision until Edgar left his father to go with Socorro and the grandparents. Miguel, like the parents in *Stevens*, wrongly assumed that Socorro and the grandparents knew of Edgar's presence.   Plaintiff attempts to distinguish *Stevens* and similar cases by arguing that there is no evidence that Miguel and Socorro knew of the pool's presence.   However, as

discussed above, the pool was a large, aboveground fixture, was adjacent to the paved walk, and was not obscured from view.

¶ 26   Contrary to plaintiff's argument, there is no genuine factual dispute that creates a jury question over the pool's visibility.   At her deposition, Socorro did not say that she could not have seen the pool had she looked; she testified that she was not paying attention.   Socorro testified at her deposition that she was concentrating on her elderly mother as they walked into the backyard. We stress again that whether a condition is open and obvious depends not on subjective knowledge but on the objective knowledge of a reasonable person confronted with the same condition.   *Park*, 2011 IL App (1st) 101283, ¶ 14.   The photographs dispel any doubt over whether the pool would be seen and recognized by a reasonable person in Socorro's position.

¶ 27   Even if we were to find a duty, we would be constrained to hold that the sole proximate cause of Edgar's death was Miguel's unforeseeable failure to supervise Edgar adequately.   The fact that the deck gate had no latch was a condition that merely made Edgar's drowning possible (assuming that this is how Edgar gained access to the pool; the record does not so demonstrate). See *O'Clair v. Dumelle*, 735 F. Supp. 1344, 1352 (N.D. Ill. 1990) (alleged defective conditions of swimming pool merely made minor's drowning possible; the objectively unforeseeable failure of the minor's mother to lock the door leading to the pool or to take other precautions was the cause of the drowning).   Furthermore, the fact that defendant placed a rack with clothes in front of the deck stairs has no legal significance.   The clothes did not conceal the pool or the stairs. Indeed, two-year-old Kristy made it up onto the deck, where Socorro found her.

¶ 28   Lastly, plaintiff asks us to revisit the open-and-obvious doctrine and to hold, in accordance with Justice Harrison's dissent in *Mt. Zion*, that children under the age of seven

cannot comprehend and avoid the risks posed by an aboveground pool. *Mt. Zion*, 169 Ill. 2d at 128 (Harrison, J., dissenting). Even if we could overrule supreme court precedent, we would not do so here. This case turns on the unforeseeability of the lack of parental supervision, which not only relieved defendant of a duty but also was the sole proximate cause of Edgar's unfortunate death.

¶ 29                                    III. CONCLUSION

¶ 30    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 31    Affirmed.