**FIRST DIVISION**
**DECEMBER 11, 2006**

No. 1-05-2749

JAYLYN HARLIN, a Minor by and )
through her Mother and Next Friend ) Appeal from the
Wanda Harlin, and WANDA HARLIN ) Circuit Court of
Individually, ) Cook County.
)
      Plaintiffs-Appellants, )
)
  v. ) No. 03 L 7923
)
SEARS ROEBUCK AND COMPANY, ) The Honorable
) Michael J. Hogan,
      Defendant-Appellee. ) Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court.

Plaintiff Jaylyn Harlin, a minor, by and through plaintiff Wanda Harlin, her mother and next friend, and Wanda Harlin, individually, filed suit against the defendant Sears Roebuck and Company after Jaylyn sustained injuries after falling and hitting her head on a display stand at a Sears department store. The trial court granted Sears's motion for summary judgment. The plaintiffs appeal, contending: (1) the trial court made procedural errors in granting summary judgment; (2) issues of material fact exist to preclude summary judgment; and (3) the trial court erred by in effect precluding the plaintiffs from filing an amended complaint. For the reasons that follow, we affirm.

BACKGROUND

On April 19, 2002, Wanda Harlin, her mother, Mattie Jackson, and Wanda's two-year-old daughter, Jaylyn Harlin, went to the Sears department store at North and Harlem Avenues in Chicago. Jaylyn, who could walk on her own, was not put in a stroller but instead held Wanda's hand as they walked through the store. As Jaylyn and Wanda passed through the hosiery department, Jaylyn fell for unknown reasons and struck her head on a corner of a stand used for displaying merchandise, causing a laceration above her eye. An ambulance took Jaylyn to West Suburban Hospital, where she received stitches.

The plaintiffs filed a two-count complaint seeking over $50,000 in damages. Count I alleged that Wanda and Jaylyn were present in a retail establishment owned or operated by Sears pursuant to a specific invitation to the public, that Jaylyn tripped and fell, "striking her face upon an unreasonably sharp edge or section of an object used by Defendant to display its merchandise," that Sears had a duty to maintain its premises in a reasonably safe manner, and that Jaylyn's fall resulted in serious injury. The plaintiffs alleged Sears carelessly, negligently and improperly: (1) maintained its premises; (2) failed to correct a condition that it knew or should have known posed serious risks to its customers, especially those of tender years; (3) failed to prevent customers and the general public

from coming in contact with said dangerous condition; and/or (4) displayed its merchandise upon equipment that it knew, or should have known, posed serious risk to its customers, especially those of tender years.  Count II sought recovery under the family expense statute of the Rights of Married Persons Act (750 ILCS 65/15 (West 2002)) for expenses Wanda incurred.

Sears moved for summary judgment, arguing it owed no duty to Jaylyn, that the display stand was open and obvious, and that it exercised reasonable care in maintaining its premises.

Attached to Sears's motion was Wanda's deposition.  Wanda stated that before the fall occurred, she and Jaylyn were walking in the middle of the hosiery department.  Wanda was walking straight ahead on a clear path toward the elevators, where Mattie was talking to a friend.  Wanda was holding Jaylyn's left hand in her right hand.  As they passed a display stand on Jaylyn's right, Jaylyn fell.  Wanda did not see what caused Jaylyn to fall and did not actually see Jaylyn fall.  However, before Jaylyn fell, Wanda saw the display stand, which she described as a tall, brown, wooden stand "with metal on the bottom" that was not circular.  The stand had socks and merchandise hanging from it and nothing blocked her view of it.  Similar stands were located throughout the hosiery department.  Before Jaylyn fell, Wanda did not perceive anything dangerous about the stand.

Jaylyn fell face down and struck her head on the edge of the

corner part of the stand toward the bottom, receiving a "big gash" above her right eyebrow that was bleeding.  Wanda showed a female Sears employee where the fall occurred, but was not sure whether the photograph of a stand taken on April 19, 2002, was the same stand upon which Jaylyn struck her head.

The plaintiffs responded to Sears's motion and argued that under Kahn v. James Burton Co., 5 Ill. 2d 614, 126 N.E.2d 836 (1955), Sears had a duty to make sure its public areas were free from dangers to children of tender years who were prone to falls. The plaintiffs also argued the stand was dangerous because it was empty and therefore acted as an obstacle to foot traffic.  They also argued Sears failed to meet its burden in demonstrating the applicability of the open and obvious doctrine.

Attached to the plaintiffs' response was the affidavit of Julius Holmes, who at the time of Jaylyn's fall, was a loss prevention agent at the Sears store at North and Harlem and, at the time of his deposition, was a loss prevention manager of a different Sears store.  Julius testified that on April 19, 2002, he was notified by a Sears employee that a little girl had fallen.  He obtained a first aid kit from the security office and went to the cosmetics area, where he saw Wanda talking to the employee.  Julius applied an ice pack to Jaylyn's brow and went with Wanda to the scene of the fall.  Wanda showed Julius the place where Jaylyn hit her head, which Julius described as a base

**4**

of a fixture. Julius inspected the area for blood or debris that Jaylyn may have slipped on, but found none. He retrieved a Polaroid camera from the security office and photographed the area where Jaylyn fell. He was unsure whether Wanda was there when he took the photos. Julius identified a photograph of an empty display stand as the one Wanda pointed out as where Jaylyn hit her head. He did not notice anything unusual about the corner, which he described as "a 90-degree piece of metal that's along the corner of that base." He also did not know whether that particular corner was rougher or smoother than the other three corners, but testified it looked the same as the other three.

Julius did not know why the display stand was empty and testified it was not unusual to see stands empty. His duties as an asset prevention agent required him to monitor the store for safety, including looking at the condition of display equipment to make sure it was presentable to customers and free of chips or loose pieces. He testified that an empty display stand would strike him as being a "safety concern." Although he would assume a display stand was empty only temporarily, he would talk to the head of the particular department where it was placed if it remained empty for more than 24 hours. Julius did not know how long the stand Wanda pointed out had been empty.

The trial court granted Sears's motion for summary judgment

and disposed of the case. The record does not contain a report of proceedings, certified bystander's report, or an agreed statement of facts of the summary judgment proceedings. The trial court thereafter denied the plaintiffs' motion to reconsider after hearing arguments from the parties.

ANALYSIS

I

The purpose of a summary judgment motion is to determine whether a genuine issue of material fact exists. Purtill v. Hess, 111 Ill. 2d 229, 240, 489 N.E.2d 867 (1986). Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2002). In determining whether a genuine issue of material fact exits, a court must construe the materials of record strictly against the movant and liberally in favor of the non-moving party. Perri v. Furama Restaurant, Inc., 335 Ill. App. 3d 825, 829, 781 N.E.2d 631 (2002). The grant of summary judgment is reviewed de novo. Perri, 335 Ill. App. 3d at 829.

II

We first address several issues presented in the parties' briefs. We initially note the plaintiffs' attorney's improper

reliance on material that is not part of the appellate record. In fact, we previously granted Sears's motion to strike a transcript of a tape-recorded statement made by Sears employee Yvette Figueroa, which was attached to the plaintiffs' brief but not included in the record on appeal, and therefore not considered by the trial court during the summary judgment proceedings. The plaintiffs' attorney also takes issue with the trial court's findings in granting summary judgment. However, this court can review the trial court's factual findings only if we have been provided with a sufficiently complete record of the trial proceedings. <u>Dargis v. Paradise Park, Inc.</u>, 354 Ill. App. 3d 171, 176, 819 N.E.2d 1220 (2004). While this court has been provided with transcripts from the reconsideration proceedings, no report of proceedings, certified bystander's report, or agreed statement of facts pursuant to Supreme Court Rule 323 (Official Reports Advance Sheet No. 2 (January 18, 2006), R.323, eff. December 13, 2005) has been provided of the summary judgment hearing.

We also disagree with the plaintiffs' contention that Sears's motion for summary judgment did not address every allegation in the complaint. Sears moved for summary judgment on the basis that it owed no duty to protect Jaylyn against any injury from falling on the display stand and, in any event, the condition of the display stand was open and obvious. The open

and obvious doctrine speaks to the duty element which, as discussed below, is a central element of any negligence claim. See <u>Bucheleres v. Chicago Park District</u>, 171 Ill. 2d 435, 447, 665 N.E.2d 826 (1996) (reaffirming "the continued viability of the open and obvious doctrine in the analysis of a landowner's duty to persons injured while on the landowner's property"). We additionally note, in reference to the plaintiffs' attack on the trial court's findings in granting summary judgment and in denying reconsideration, that this court may affirm a trial court's grant of summary judgment on any basis apparent in the record, regardless of whether the trial court relied on that basis or whether the court's reasoning was correct. <u>Castro v. Brown's Chicken & Pasta, Inc.</u>, 314 Ill. App. 3d 542, 552, 732 N.E.2d 37 (2000); <u>Stevens v. Riley</u>, 219 Ill. App. 3d 823, 834, 580 N.E.2d 160 (1991). Further, although the plaintiffs intimate in their reply brief that Sears raises issues and relies on cases not presented during the summary judgment proceedings, "[i]t is quite established that 'the appellee may urge any point in support of the judgment on appeal, even though not directly ruled on by the trial court, so long as the factual basis for such point was before the trial court.'" <u>Beahringer v. Page</u>, 204 Ill. 2d 363, 370, 789 N.E.2d 1216 (2003), quoting <u>Shaw v. Lorenz</u>, 42 Ill. 2d 246, 248, 246 N.E.2d 285 (1969).

Having clarified that we are considering only materials

included in the appellate record, that we are reviewing the ruling and not the reasoning of the trial court, and that we may affirm the grant of summary judgment on any factual basis supported by the record, we turn to the merits of this appeal.

III

The plaintiffs contend summary judgment was improper in this negligence action. To state a cause of action for negligence, a plaintiff must establish the existence of a duty, the defendant's breach of that duty, and that the breach was the proximate cause of the plaintiff's resulting injuries. Mt. Zion State Bank & Trust v. Consolidated Communications, Inc., 169 Ill. 2d 110, 116, 660 N.E.2d 863 (1995); Ward v. K Mart Corp., 136 Ill. 2d 132, 140, 554 N.E.2d 223 (1990).

The issue in this case is whether Sears owed a duty to exercise due care to remedy the condition of the display stand or otherwise protect Jaylyn, a two-year-old child, from any resulting injury. The imposition of a duty depends on: (1) the foreseeability of injury; (2) the likelihood of injury; (3) the magnitude of the burden of guarding against the injury; and (4) the consequences of placing that burden on the defendant. Ward, 136 Ill. 2d at 140-41; Kay v. Ludwick, 87 Ill. App. 2d 114, 117-18, 230 N.E.2d 494 (1967). The determination of the existence of a duty presents a question of law appropriately determined by summary judgment. Green v. Jewel Food Stores, Inc., 343 Ill.

App. 3d 830, 832, 799 N.E.2d 740 (2003).

The touchstone of a court's duty analysis is to determine whether the defendant and the plaintiffs stood in such a relationship to each other that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiffs.  Happel v. Wal-Mart Stores, Inc., 199 Ill. 2d 179, 186, 766 N.E.2d 1118 (2002).  Generally speaking, an owner or occupier of land owes no greater duty to small children than the duty owed to adults.  Perri, 335 Ill. App. 3d at 830.  The primary responsibility for the safety of a child rests with his or her parent, "whose [responsibility] it is to see that the child is not placed in danger."  Mt. Zion, 169 Ill. 2d at 116, citing Driscoll v. C. Rasmussen Corp., 35 Ill. 2d 74, 79, 219 N.E.2d 483 (1966).

The plaintiffs have not provided this court with any case involving a factual situation similar to that presented in this appeal.  They contend, however, that Sears's duty arises under our supreme court's decision in Kahn, which, along with its progeny, "established the foreseeability of harm to children as the cornerstone of liability."  Corcoran v. Libertyville, 73 Ill. 2d 316, 326, 383 N.E.2d 177 (1978).  Under Kahn, a duty will be imposed on an owner or occupier of land to exercise due care to remedy a dangerous condition on the land or otherwise protect children from injury due to the dangerous condition where: (1)

the owner or occupier knows or should know that children habitually frequent the property; (2) a defective structure or dangerous condition is present on the property; (3) the defective structure or dangerous condition is likely to injure children because they are incapable, due to their age and immaturity, of appreciating the risk involved; and (4) the expense and inconvenience of remedying the defective structure or dangerous condition is slight when compared to the risk to children.  Mt. Zion, 169 Ill. 2d at 117, citing Kahn, 5 Ill. 2d at 625.

Kahn is usually addressed in cases where the injured minor is trespassing or unaccompanied.  See Corcoran, 73 Ill. 2d at 326 (the essence of Kahn is to impose a duty "to remedy conditions which, although considered harmless to adults, are dangerous to children who foreseeably wander onto the premises").  However, Kahn has been discussed and applied in cases like this where the injured child is accompanied by a parent.  See Perri, 335 Ill. App. 3d 825 (infant injured while accompanied by her parents at the defendant restaurant); Stevens, 219 Ill. App. 3d 823 (accompanied minor injured while a social guest at the defendants' home); Kay, 87 Ill. App. 2d 114 (same); Stankowitz v. Goldblatt Brothers, Inc., 43 Ill. App. 2d 173, 193 N.E.2d 97 (1963) (accompanied minor injured at the defendant department store).  In light of the plaintiffs' contentions, we will assume without further discussion that the Kahn doctrine applies in this

case.

    We first address the threshold determination under <u>Kahn</u>: whether a dangerous condition existed on Sears's property.  The dangerous condition alleged in this case was an "unreasonably sharp edge or section" of the display stand.  A dangerous condition under <u>Kahn</u> is one which is likely to cause injury to children, who, by reason of their age and immaturity, would not be capable of appreciating the risk involved.  <u>Mt Zion</u>, 169 Ill. 2d at 120.  However, even where landowners are aware that children frequent the premises, "the law does not require [the landowner] to protect against the omnipresent possibility that children will injure themselves on obvious or common conditions." <u>Barrett v. Forest Preserve District</u>, 228 Ill. App. 3d 975, 979, 593 N.E.2d 990 (1992).  Put another way, if the condition involves an obvious risk children would generally be expected to appreciate and avoid, the owner or occupier of the land has no duty to remedy the condition.  <u>Cope v. Doe</u>, 102 Ill. 2d 278, 286, 464 N.E.2d 1023 (1984); <u>Stevens</u>, 219 Ill. App. 3d at 829. Dangers that children are expected to appreciate include those presented by fire, water, or falling from height.  <u>Cope</u>, 102 Ill. 2d at 286-87, citing Restatement (Second) of Torts §339, Comment J, at 203 (1965).

    The plaintiffs contend that the corner of the display stand constituted a latent dangerous condition that a two-year-old

child could not be expected to appreciate. The plaintiffs' contention demonstrates the difficulty of applying the Kahn doctrine in this case, as cases relying on Kahn generally involve a dangerous condition that a child actively encounters. In this case, however, there was no evidence that the corner of the display constituted a dangerous condition in the absence of Jaylyn falling upon it. Of course, Jaylyn had no control over what she would encounter when she fell. That she would strike any particular object and would sustain injuries other than those associated with a fall itself was unforeseeable, in the absence of any evidence that the stand itself caused the fall. Given that the injury to Jaylyn occurred during an involuntary act of falling, her age and immaturity had no bearing on appreciating the risk of injury in falling on the corner of the display.

Additionally, as Sears points out, that an injured child was under the care or control of a parent will sometimes absolve defendants of their duty toward the child. Compare Stevens, 219 Ill. App. 3d 823, and Kay, 87 Ill. App. 2d 114, with Perri, 335 Ill. App. 3d 825. While a mere allegation that an injured child was accompanied by his or her parent is not enough to relieve the landowner of his or her duty, the landowner will be absolved of a duty where the child was injured due to an obvious danger while under the supervision of his or her parent, "or when the parents knew of the existence of the dangerous condition that caused the

**13**

child's injury."  Stevens, 219 Ill. App. 3d at 832.

In Stevens, a child, not yet 18 months old, was a social guest with her parents at the defendants' home, fell into a pond located in the defendants' backyard and suffered brain injury. The trial court granted summary judgment in favor of the defendants, finding they owed no duty to the child.  In affirming the trial court's decision, the reviewing court first addressed whether a dangerous condition existed on the premises.  Although bodies of water have been found to constitute obvious dangers to children, the plaintiffs argued that the danger of the pond was not obvious because it was obscured by weeds and had a sudden drop-off.  The reviewing court agreed with the plaintiffs' contention that a very young child may not be expected to avoid the dangers of drowning, but found that because the child's parents were aware of the water, a visible dangerous condition, and the weeds, the defendants were relieved of their duty to protect the child.  Stevens, 219 Ill. App. 3d at 833.  See also Kay, 87 Ill. App. 2d 114 (holding the defendant landowner owed no duty to a four-year-old child who severed her heel attempting to climb the back of a riding lawn mower where the use of the mower was either fully known or patently obvious to the mother, who observed no harm in allowing her child to play near the operating mower).

In Perri, the parents of a three-month-old girl sued a

restaurant after a four-year-old boy at their table, who was accompanied by his parents, spun a lazy susan upon which a pot of hot tea had been placed and burned the infant. A waitress had placed the tea on the table unbeknownst to the adults in the party. The trial court granted summary judgment in favor of the defendant restaurant. This court reversed, holding that the hot tea on the lazy susan was a dangerous condition because a four-year-old could not be expected to appreciate the risk presented by it and because it was foreseeable that a four-year-old would play with the lazy susan. The presence of the parents did not absolve the restaurant of its duty because the parents were only required to exercise due care in the face of obvious risks. The tea was not an obvious risk because the parents were not aware that it had been placed on the table. Further, even if it was an open and obvious risk, it was reasonable for the restaurant to anticipate the danger, as the hot tea was placed on the table as the party was being seated and the adults may have been distracted. Perri, 335 Ill. App. 3d at 832, citing Ward, 136 Ill. 2d at 156.

Applying the reasoning of Stevens, Kay, and Perri to this case, we find that even if the corner of the display stand constituted a dangerous condition, Sears did not owe Jaylyn a duty. Wanda testified she saw the display stand, which she described as tall, wooden, not circular, and as having metal on

**15**

the bottom, before Jaylyn fell.  She also testified it was similar to the numerous stands throughout the hosiery department. This case is therefore unlike Perri, where the parents were unaware that the hot tea had been placed on their table.  Rather, as in Stevens, in this case the parent was made aware of any dangerous condition, even if the injured child could not be expected to appreciate it.  As in Kay, Wanda apparently saw no harm in letting her daughter walk on her own near the display stand.  Although Wanda testified she did not perceive anything dangerous about the stand, we find that it is a matter of common sense that two year olds often fall and may get hurt when they land on noncircular objects with metal at the bottom.  See Young v. Chicago Housing Authority, 162 Ill. App. 3d 53, 57, 515 N.E.2d 779 (1987) (children who fall from monkey bars at playgrounds can be expected to appreciate the "commonsense principle *** : if you fall, you might get hurt").  Unlike in Perri, in this case the plaintiffs do not argue they were distracted.

This is not a case where a store negligently maintained its display stands in a manner such that it would be foreseeable that children would attempt to climb upon and swing from them.  See Wal-Mart Stores, Inc. v. Lerma, 749 S.W.2d 572 (Tx. App. 1988). Rather, in this case, a child tripped for unknown reasons and injured herself.  While it is always unfortunate when a child is injured, we find that summary judgment was properly granted in

1-05-2749

this case.

The plaintiffs argue that the deposition testimony and photographic evidence in the record present a factual dispute about whether the display stand was empty. They also argue Julius Holmes's testimony indicating a stand left empty for more than 24 hours constituted a "safety concern" established the placement of the stand was improper. While we agree with the plaintiffs that a factual dispute exists about whether the stand was empty or full, we do not find this factual dispute to be material in light of Wanda's testimony that she saw the stand before Jaylyn fell.

IV

The plaintiffs' final contention is that the trial court erred by in effect precluding them from filing an amended complaint. Section 2-1005(g) of the Code of Civil Procedure provides "[b]efore or after the entry of a summary judgment, the court shall permit pleadings to be amended upon just and reasonable terms." 735 ILCS 5/2-1005(g) (West 2002). A trial court's decision whether to permit amendment is reviewed for an abuse of discretion. In re Estate of Hoover, 155 Ill. 2d 402, 416, 615 N.E.2d 736 (1993).

We initially disagree with the plaintiffs contention that the trial court precluded them from filing an amended complaint. Our reading of the record shows that the trial court did, in

**17**

fact, leave open the possibility of the filing of an amended complaint. Further, our supreme court has set forth a four-pronged test to determine whether amendment should be permitted. <u>Hoover</u>, 155 Ill. 2d at 416. The test, however, is premised on the filing of a proposed amended complaint. The plaintiffs in this case never sought leave to file an amended complaint, and no proposed amended complaint was submitted to the trial court. Under these circumstances, the trial court cannot be said to have abused its discretion. See <u>Frantzve v. Joseph</u>, 150 Ill. App. 3d 850, 853, 502 N.E.2d 396 (1986) (plaintiffs who fail to seek leave to file an amended complaint waive any right to question the trial court's dismissal of a complaint without permitting amendment).

CONCLUSION

For these reasons, the decision of the circuit court of Cook County is affirmed.

Affirmed.

McBRIDE, P.J., and CAHILL, J., concur.