# Illinois Official Reports

## Appellate Court

***Henderson v. Lofts at Lake Arlington Towne Condominium Ass'n***,
**2018 IL App (1st) 162744**

| | |
|---|---|
| Appellate Court Caption | STEVEN A. HENDERSON, Plaintiff-Appellant, v. LOFTS AT LAKE ARLINGTON TOWNE CONDOMINIUM ASSOCIATION, BUILDING MAINTENANCE SYSTEMS, INC., PROPERTY SPECIALISTS, INC., Defendants-Appellees (Karen Popke, Third-Party Defendant-Appellee). |
| District & No. | First District, Sixth Division<br>Docket No. 1-16-2744 |
| Filed | March 16, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-L-63053; the Hon. Thomas D. Roti, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | Norman J. Lerum, P.C., of Chicago (Norman J. Lerum and Catherine E. Lerum, of counsel), and James M. Messineo, of Inverness, for appellant.<br><br>Dana Crowley & Associates, of Barrington (Dana C. Crowley, of counsel), for appellees Lofts at Lake Arlington Towne Condominium Association and Property Specialists, Inc. |

The Hunt Law Group, LLC, of Chicago (Brian J. Hunt and Sierra N. Hagl, of counsel), for appellee Building Maintenance Systems, Inc.

Doherty & Progar, LLC, of Chicago (Michael T. Sprengnether, of counsel), for other appellee.

Panel                JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Delort concurred in the judgment and opinion.

**OPINION**

¶ 1       Plaintiff-appellant, Steven A. Henderson, challenges an order of the circuit court of Cook County dismissing his negligence action upon granting summary judgment to the defendants, which consist of the Lofts at Lake Arlington Towne Condominium Association (Lofts), Property Specialists, Inc. (PSI), and Building Maintenance Systems, Inc. (BMS). In the same order, the trial court also granted summary judgment dismissing BMS's contribution claim against third-party defendant Karen Popke. For the following reasons, we reverse the order of the circuit court of Cook County to the extent it granted summary judgment to the defendants, but we affirm the circuit court's order to the extent it dismissed BMS's contribution claim against Popke.

¶ 2                                       BACKGROUND

¶ 3       The Lofts is an association of owners of condominium units in Arlington Heights, Illinois. PSI serves as the Lofts' property manager. BMS is an independent contractor that was hired by Lofts to perform work in 2008 that allegedly caused Henderson to be injured in a slip-and-fall incident. At all relevant times, Henderson resided with Popke, his girlfriend, at a condominium unit owned by Popke (the condominium), which was part of the Lofts.

¶ 4       In September 2011, Henderson filed a complaint pleading negligence counts against the Lofts, PSI, and BMS. Henderson alleged that, when he attempted to enter the condominium on the evening of October 2, 2009, he slipped and fell on a "stoop and stairs" just outside the condominium entrance. He sustained severe injury to his left ankle and knee, which led to multiple surgeries.

¶ 5       The complaint alleged that the "stoop and stairs" were "common property owned, operated and managed by" the Lofts. Henderson pleaded that the Lofts owed a common law duty to maintain this area, both under the common law and pursuant to section 18.4 of the Condominium Property Act (Act) (765 ILCS 605/18.4(a) (West 2010) (providing that the "powers and duties of the board of managers" include providing for the "care, upkeep, maintenance, replacement and improvement of the common elements")). Henderson further alleged that the Lofts owed duties to maintain and repair the "Common Elements" under the Lofts' declaration and bylaws.

- 2 -

¶ 6        The complaint pleaded that PSI was hired by the Lofts to "maintain the common areas including the stairs and stoop" and that BMS was hired by the Lofts, "either directly or through [PSI] to apply a special concrete epoxy sealant and co-efficient of friction to the stoop and stairs." Henderson alleged that the defendants received but failed to respond to "numerous complaints" from Popke and Henderson "regarding the slippery condition of the stoop and stairs" before his October 2009 injury. The complaint alleged that the defendants negligently failed to, *inter alia*, maintain and inspect the property or to warn of the dangerous condition, proximately causing his injuries.

¶ 7        On October 25, 2011, the Lofts and PSI jointly filed an answer, admitting that the Lofts "owns the subject stairs and stoop" at Popke's condominium but denying any negligence. They also filed affirmative defenses, including assertions that Henderson failed to use reasonable care and "[f]ailed to avoid the obvious condition of the stoop and stair."

¶ 8        On April 24, 2012, the Lofts and PSI filed a counterclaim for contribution against BMI, alleging that the Lofts "engaged [BMI] to apply a concrete epoxy sealant" to certain common elements. The counterclaim alleged that BMI "failed to properly apply the epoxy concrete sealant so as to provide a sufficient cohesion of friction."

¶ 9        In June 2012, BMS filed an answer denying allegations of liability. As an exhibit to its answer, BMS submitted a proposal dated May 21, 2008, which was directed to George Pierce of PSI. BMI's proposal quoted prices for "the installation of an epoxy coating on the front entry steps and stoops" of several condominium addresses, including a price quote of $848 for work at Popke's condominium. Under the heading "Acceptance of Proposal," Pierce signed the proposal as "agent for Lofts" on May 22, 2008. In addition to its answer, BMS pleaded an affirmative defense of "comparative negligence" in which it asserted that Henderson "failed to avoid an open and obvious hazard."

¶ 10       In August 2013, BMS filed a third-party complaint for contribution against Popke. BMS alleged that Popke owed a duty to maintain the "front stoop and stairs" in a reasonably safe condition for invitees, citing provisions of the Lofts' declaration and bylaws concerning "Limited Common Elements." BMS alleged that Popke negligently breached her duty by, *inter alia*, permitting a dangerous condition to remain on the premises, which proximately caused Henderson's injuries. BMS thus pleaded "If [Henderson] prevails against [BMS] then [BMS] is entitled to receive contribution" from Popke "based on the percentage to which the liability of fault of Karen Popke, caused *** [Henderson's] injuries or damages pursuant to the Joint Tortfeasors Contribution Act."

¶ 11       In February 2014, Popke moved to dismiss BMS's third-party complaint. She argued that only the Lofts had a duty to maintain and repair the area where Henderson slipped because it fell within the definition of "Common Elements" under the Lofts' declaration and bylaws. BMS's response contended that the area fell within the definition of "Limited Common Elements" under other provisions, such that Popke maintained a duty of care. On October 3, 2014, the trial court denied Popke's motion to dismiss the third-party complaint.

¶ 12       The parties engaged in discovery, including depositions of Henderson and Popke. Both testified that Henderson had resided at the condominium for a number of years, and both described two entrances to the condominium: a front entrance and a garage entrance. The front entrance area includes a sidewalk leading from the driveway to a single step and a front porch, which abuts the front door. The condominium was also accessible through an entrance in an adjacent garage. Henderson testified that he used the front entrance the "majority" of the time,

and that he entered or exited the condominium on a daily basis. Asked about the garage entrance, Henderson testified, "It's a tight area. We got a lot of stuff in our garage."

¶ 13    Henderson recalled that, before his injury, he learned that the Lofts hired a maintenance company to apply epoxy to the front step of the condominium. After the epoxy treatment, he noticed the front step was "real slippery" when wet. Henderson recalled that he slipped at the site on two prior occasions before his October 2009 injury. After the first incident, he told Popke that the front porch was "real slippery when wet" and that he was concerned Popke's mother was "going to break her hip." Popke told him that she would "make a complaint."

¶ 14    Henderson testified about a second incident where "[i]t was wet, and I slipped" but "caught myself." He recalled that he and Popke "walked over, and I know we talked to George [Pierce]." They told Pierce that the "front steps are real slippery," and Pierce said he would "look into it." Henderson acknowledged that, prior to the October 2009 incident, he was generally aware that the step and porch were slippery when wet but that "[i]t wasn't etched in my mind."

¶ 15    On the evening of the incident, Henderson drove to the condominium by himself after attending a football game with his daughter. Popke was out of town at that time. He recalled that it was raining. When asked how hard the rain was, he answered, "Raining enough I wanted to get out of the rain. I don't know how hard." Asked if he "knew that the step was going to be wet" when he arrived at the condominium, Henderson testified, "I didn't think about it, to tell you the truth." Henderson recalled, "I left my car, came around the car, stepped on the front step. My foot slid into the upper riser when I was coming across. My foot slipped, and I fell back." He found himself "laying on the ground." He felt pain in his lower left leg and was unable to stand up, so he "crawled" into the condominium. The next day, he drove himself to a hospital.

¶ 16    At her deposition, Popke testified that Henderson resided with her at the condominium since 2005 or 2006. She testified that the Lofts maintains common areas of the condominiums, including driveways and the "exterior or the porches."

¶ 17    Popke testified that, prior to Henderson's incident, she went to Pierce's office to complain that "once they put this epoxy stuff down, it was slippery; they needed to fix it." She testified that she complained in 2008, "right after that epoxy was placed." She recalled, "I said, 'George, whatever you guys did to my front stoop is very slippery, dangerous.' " She testified that she complained to Pierce "about three or four times" before Henderson's October 2009 incident. After her second complaint, Pierce "said he would get somebody out there," and Popke recalled that some work was done, but she testified that "it was not fixed." She stated that she again complained to Pierce and told him "whatever you guys did, it is still slippery."

¶ 18    Asked about the garage, Popke testified that "it gets very messy, and sometimes, no, you can't walk in there sometimes." She agreed that she primarily used the front entrance to the condominium, as it was easier than "having to squeeze through the garage and the car on the side of the garage." Popke testified that Henderson also typically used the front entrance.

¶ 19    Following Henderson's injury, Popke wrote a letter to the Lofts, dated October 22, 2009. The letter stated "In 2008 our front porch and stairs were redone with a silicon covering" and that this "caused the porch and stairs to be slippery." Popke wrote that "I brought this to the attention of the office at Lake Arlington when it was done. *** The office had the company come out to resurface it but they did not correct the problem and it was still dangerous to walk on. I again told the office after the first resurface but no one has come out to resurface again in

the last year." She also wrote, "All of this has resulted in my boyfriend being injured on the porch on October 2, 2009."

¶ 20    George Pierce, an employee of PSI, was deposed. Pierce stated that he is the property manager for the Lofts and that he has an "on-site" office. Pierce agreed that the porch and steps leading to the front entrance of Popke's condominium were common elements and agreed that common elements "are the responsibility of the association." He also agreed that PSI managed the maintenance of common areas.

¶ 21    Pierce testified that the Lofts' board of directors (board) decides which contractors are hired to perform maintenance. Pierce recalled recommending to the board that a contractor review the condition of the Lofts' concrete sidewalks and stoops. As a result, in 2008, BMS "walked the property and looked at each sidewalk and stoop." BMS suggested that epoxy "would be a good application for the stoops that have minor cracks" and "would give the front of the building a nice look." Pierce presented the May 2008 BMS proposal to the board for approval. Pierce acknowledged that he signed the proposal on behalf of the Lofts and that the work was performed sometime later in 2008.

¶ 22    Pierce denied that he received any complaints from Henderson or Popke about the epoxy work before Henderson's October 2009 incident. However, Pierce acknowledged that, shortly after the 2008 epoxy work, it came to his attention that "there was a problem with the stoops." Pierce testified "right after the work was done," he "got phone calls *** from homeowners stating that there was an issue with sand coming off the coating, and their stoops were either shiny or seemed slippery." Pierce testified that he verbally relayed these complaints to BMS and that he had asked BMS "to check all the stoops."

¶ 23    Pierce was asked if he knew "why an epoxy treatment of concrete stoop could become too slippery after the work was done." He testified:

> "My understanding is *** that the application of the epoxy and sand had to be done in a specific time frame for the sand *** to adhere to the epoxy properly, and this was not being done. And this is why when it rained or they went and swept their balcony or their front stoop, the sand was coming off because it had not adhered to the epoxy properly."

Pierce stated that he "found out what the problem was from BMS."

¶ 24    Jay Maynor, the president of BMS, was deposed. He testified that BMS stopped doing business during 2012. Maynor was asked about the May 2008 BMS proposal for epoxy coating at the Lofts. Maynor acknowledged that sometime after the work was performed in 2008, he was notified by Pierce of complaints of slipperiness. Maynor testified that he inspected 10 to 15 residences at the Lofts, including Popke's residence. He stated that he "walked up to each location, just looked at it to see if I saw quartz crystals and grit apparent on the surface. I put my foot on it. I'd walk on it. I'd try and drag my boot and, *** see if it was slippery to me or if it had texture." Maynor stated that "none seemed to even be remotely slippery" but acknowledged that he did not run water over the steps. Maynor was unclear as to when this occurred. At one point he testified that he inspected only after receiving notice of Henderson's October 2009 injury. However, he later testified that he could not "remember exactly" if he visited Popke's residence before October 2009.

¶ 25    On December 14, 2015, Popke filed a motion for summary judgment seeking dismissal of BMS's contribution claim. Popke argued that she "did not owe a duty to [Henderson] since the

subject condition was open and obvious." In turn, Popke argued that she could not be held liable to BMS for contribution.

¶ 26　　On February 4, 2016, the Lofts and PSI jointly filed a motion for summary judgment, which argued that they had no duty to Henderson because the epoxy-coated step "presented an open-and-obvious risk of falling when the step was wet" that was "well known" to him. The motion claimed that Henderson's testimony established that, since it was raining at the time of the incident, "he knew from prior experience that the step would be slippery." They also argued that Henderson "could enter his residence safely through the garage" but "chose not to do so." The motion acknowledged a "forgetfulness or distraction" exception to the "open and obvious" doctrine but claimed there was no evidence that Henderson was distracted or had forgotten that the step was slippery when wet. The motion also argued that the "deliberate encounter" exception to the "open and obvious" doctrine did not apply because Henderson "had a safe means of entering" through the garage but chose to proceed to the front entrance. Accordingly, the Lofts and PSI argued that they "did not owe a duty *** to protect him from the risk of falling posed by the wet, epoxy-coated step," precluding their negligence liability.

¶ 27　　On May 27, 2016, BMS also moved for summary judgment against Henderson. Similar to the Lofts and PSI, BMS based its motion on the "open-and-obvious" doctrine, arguing that Henderson "was aware of the risk that the step posed when wet, he was not distracted ***, and there was an available alternate means of entry to the subject premises that the plaintiff chose not to utilize." BMS argued that a finding that the condition was "open and obvious" should apply "to all parties accused of negligence, including BMS."

¶ 28　　On the same date, BMS responded to Popke's motion for summary judgment with respect to BMS's contribution claim against her. BMS argued that Popke's motion should be denied because she owed a duty to "maintain her front porch in a reasonably safe condition" and "to prove a safe means of ingress and egress to her home."

¶ 29　　On September 16, 2016, the trial court entered an order granting "the various Defendants' Motions [for] Summary Judgment" and dismissing the case with prejudice.[1] The trial court found that the "open and obvious rule" applied, because Henderson's deposition testimony showed that he "acknowledged the nature of the danger, that he knew of the danger and that he was concerned about the danger." The court found that "the open and obviousness of the front porch slippery condition has been established."

¶ 30　　The trial court further found that the "deliberate encounter exception" to the open and obvious doctrine did not apply, citing Henderson's testimony that he could enter through the garage but did not do so "because there was a lot of 'stuff' in the garage." The court concluded: "it is apparent that [Henderson and Popke] knew of the danger that the front porch presented and for some period of time, decided to do nothing about it nor try and make the garage more accessible. Rather they decided to take a chance when it rained and use the slippery steps."

---

[1]The opening paragraph of the trial court's order indicates that it pertains to all pending motions, including Popke's motion for summary judgment regarding BMS'S contribution claim:

"This Opinion and Order concerns the Negligence claim of Plaintiff *** against defendants [Lofts]; *** [BMS]; and [PSI.] It also concerns the contribution claim of BMS against [Popke]. All defendants have moved for Summary Judgment ***. For the reasons stated in the following Opinion, said Motions are granted."

However, the remainder of the order does not differentiate between the various motions.

- 6 -

¶ 31    The trial court's order concluded that "the various Defendants' Motions [for] Summary Judgment *** are granted" and dismissed the action with prejudice. The order did not otherwise differentiate between the various pending motions and did not separately mention BMS's contribution claim against Popke.

¶ 32    On October 14, 2016, Henderson filed a timely notice of appeal from the September 16, 2016, order, affording this court jurisdiction under Illinois Supreme Court Rule 303(a) (eff. Jan. 1, 2015).

¶ 33                                    ANALYSIS

¶ 34    On appeal, Henderson asserts a number of arguments for reversal of the entry of summary judgment in favor of the defendants. Among these, he claims that the trial court erred in finding that the defendants owed him no duty under the "open and obvious" doctrine. He claims "the dangerous condition of the stoop and step in this case was not open and obvious because neither the condition itself nor the risk was apparent to a reasonable person." He also relies heavily on our supreme court's decision in *Ward v. K Mart Corp.*, 136 Ill. 2d 132 (1990), for the proposition that the doctrine will not relieve a defendant of its duty to protect against a "known" or "obvious" condition, if it is reasonably foreseeable that a plaintiff could forget the condition. He argues that it was reasonably foreseeable that he "would be injured walking on an epoxy coated step that does not appear to be dangerous, at night" and in the rain. Henderson acknowledges his testimony that he slipped twice before at the same location but also notes his testimony that the condition of the stoop was not "etched" in his mind. Thus, he contends that the defendants "could certainly anticipate that [Henderson] would momentarily forget that the epoxy step and stoop was slippery when wet."

¶ 35    Separately, Henderson argues that a finding of an "open and obvious" condition would not automatically relieve the defendants' common law duty of care and that the trial court failed to properly weigh the relevant factors in the duty analysis. Henderson independently argues that BMS cannot benefit from the open and obvious doctrine because BMS did not own, occupy, or control the property.

¶ 36    Furthermore, apart from any common law duty, Henderson urges that the Lofts were obligated to maintain the stoop and front step as "common elements" pursuant to section 18.4(a) of the Act (765 ILCS 605/18.4(a) (West 2010)), as well as under the Lofts' condominium declaration. Henderson also asserts that PSI independently owed a duty of care under its property management contract with the Lofts and that BMS had a duty under its proposal to install the epoxy coating "so that the step and stoop was not unreasonably slippery or dangerous when wet."

¶ 37    We begin our analysis with the applicable standard of review upon summary judgment. "Summary judgment is appropriate 'if the pleadings, depositions, and admissions on file, *** show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.] In determining whether the moving party is entitled to summary judgment, the court must construe the pleadings and evidentiary material in the record strictly against the moving party." *Morrissey v. Arlington Park Racecourse, LLC*, 404 Ill. App. 3d 711, 724 (2010).

¶ 38    "In a negligence action, the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12.

- 7 -

"Whether a duty exists is a question of law for the court to decide. [Citation.] 'In the absence of a showing from which the court could infer the existence of a duty, no recovery by the plaintiff is possible as a matter of law and summary judgment in favor of the defendant is proper.' [Citation.] We review summary judgment rulings *de novo*." *Id.* ¶ 13.

¶ 39    "In resolving whether a duty exists, we ask 'whether defendant and plaintiff stood in such a relationship to one another that the law imposed upon defendant an obligation of reasonable conduct for the benefit of plaintiff.' [Citation.] Four factors guide our duty analysis: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. [Citations.] The weight to be accorded these factors depends upon the circumstances of a given case." *Id.* ¶ 14.

¶ 40    In this case, the trial court premised its grant of summary judgment to all defendants upon the "open and obvious doctrine," which is "an exception to the general duty of care owed by a landowner." *Park v. Northeast Illinois Regional Commuter R.R. Corp.*, 2011 IL App (1st) 101283, ¶ 12. As stated by our supreme court, "persons who own, occupy, or control and maintain land are not ordinarily required to foresee and protect against injuries from potentially dangerous conditions that are open and obvious." *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 447-48 (1996). "In cases involving obvious and common conditions, such as fire, height, and bodies of water, the law generally assumes that persons who encounter these conditions will take care to avoid any danger inherent in such condition. The open and obvious nature of the condition itself gives caution and therefore the risk of harm is considered slight; people are expected to appreciate and avoid obvious risks." *Id.* at 448. For example, in *Bucheleres*, our supreme court held that the doctrine shielded the Chicago Park District from liability to individuals who dove into Lake Michigan, since the lake, "as a large body of water *** presents open and obvious risks to lakefront patrons who dive from concrete seawalls into the lake." *Id.* at 455-56.

¶ 41    However, "[t]he existence of an open or obvious danger is not an automatic bar to finding a legal duty on the part of the landowner. [Citation.] Rather, the existence of a duty in the face of a known or obvious condition is subject to the same analysis of a duty as is necessary in every claim of negligence," requiring analysis of the same four duty factors. *Park*, 2011 IL App (1st) 101283, ¶ 13; see also *Bucheleres*, 171 Ill. 2d at 456 ("Having affirmed the applicability of the open and obvious doctrine to the case at bar, we complete the analysis of duty by assessing the effect the open and obvious doctrine has on the traditional factors that are relevant to the courts' imposition of a duty."). Specifically, the open and obvious doctrine "implicates the first two" of the four factors of the duty analysis: the likelihood of injury and foreseeability. *Park*, 2011 IL App (1st) 101283, ¶13; *Bucheleres*, 171 Ill. 2d at 456.

¶ 42    Furthermore, our courts also recognize two specific exceptions to the open and obvious doctrine, which "make provision for cases in which 'the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.' " *Bruns*, 2014 IL 116998, ¶ 20 (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). Our supreme court explained:

"Illinois law recognizes two such exceptions: the 'distraction exception,' and the 'deliberate encounter exception.' [Citations.] The distraction exception applies ' "where the possessor [of land] has reason to expect that the invitee's attention may be

distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." ' *Sollami* [*v. Eaton*], 201 Ill. 2d [1,] 15 (2002) (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965)). The deliberate encounter exception applies ' "where the possessor [of land] has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." ' *Id.* (quoting Restatement (Second) of Torts § 343A cmt. f, at 220 (1965))." *Bruns*, 2014 IL 116998, ¶ 20.

¶ 43    In this case, we note that the trial court's order considered only the second of these two exceptions to the open and obvious rule, when it concluded that the "deliberate encounter exception" did not apply. The trial court did not discuss the first exception, which has been called the " 'forgetfulness or distraction' exception to the general rule of no liability for open and obvious conditions." *Bucheleres*, 171 Ill. 2d at 451. This exception is exemplified by *Ward*, 136 Ill. 2d 132. As the plaintiff relies heavily on *Ward*, which we find to be instructive, we review that decision in detail.

¶ 44    The *Ward* plaintiff was injured shortly after he purchased a large mirror at the defendant's department store. *Id.* at 138. As he exited the store, he walked into one of two five-foot-tall concrete posts just outside the customer entrance; the posts were "presumably intended to protect the doorway from damage *** by backing or parked vehicles." *Id.* at 135-36. The plaintiff acknowledged that, when he entered the store, he walked past and "[s]ubconsciously" noticed the posts. *Id.* at 137. However, the plaintiff testified that "he could not see the post as he exited the store because the mirror" that he was carrying "blocked his view." *Id.* at 138.

¶ 45    After trial, a jury found for the plaintiff and awarded damages but also found the plaintiff was 20% comparatively negligent. *Id.* at 139. The circuit court entered judgment for the defendant notwithstanding the verdict, concluding that the defendant had no duty to protect the plaintiff from "the risk of colliding with the post." *Id.* at 135. The appellate court affirmed, finding that the defendant "owed no duty to plaintiff *** because defendant could not reasonably have been expected to foresee that plaintiff *** would fail to see or remember the post, which was an obvious condition on defendant's premises, and which plaintiff had previously encountered." *Id.*

¶ 46    On appeal, the supreme court addressed "the validity of the 'known' or 'obvious' risk principle." *Id.* at 145. The court recognized that the "traditional rule *** that an owner or occupier of land has no duty under any circumstances to protect entrants from conditions on his land of which the entrant knows and realizes the risk or which are obvious, has fallen under harsh criticism." *Id.* at 146. The *Ward* court specifically rejected a "*per se* rule that under no circumstances does the defendant's duty of reasonable care extend to conditions which may be labeled 'open and obvious' or of which the plaintiff is in some general sense 'aware.' " *Id.* at 147. ("Attempting to dispose of litigation by merely invoking such relative and imprecise characterizations as 'known' or 'obvious' is certainly no adequate substitute for assessing the scope of the defendant's duty under the circumstances ***." *Id.* at 147-48.)

¶ 47    *Ward* recognized that the "manifest trend of the courts in this country is away from the traditional rule absolving, *ipso facto*, owners and occupiers of land from liability for injuries resulting from known or obvious conditions, and toward the standard expressed in section 343A(1) of the Restatement (Second) of Torts (1965)." *Id.* at 150. Under section 343A, " 'A possessor of land is not liable to his invitees for physical harm caused to them by any activity

or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*' " (Emphasis in original.) *Id.* at 149 (quoting Restatement (Second) of Torts, § 343A (1965)).

¶ 48     *Ward* also cited the Restatement commentary recognizing that a plaintiff may be distracted from an "obvious" danger or forget a "known" danger:

> " 'Comment *e* of section 343A(1) states the general rule that the owner or occupier may reasonably assume that invitees will exercise reasonable care for their own safety, and that ordinarily he need not take precautions against dangers which are known to the visitor or so obvious that the visitor may be expected to discover them. Comment *f*, however, explains that reason to expect harm to visitors from known or obvious dangers may arise 'where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. *** In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.' Restatement (Second) of Torts § 343A, comment f, at 220 (1965)." *Id.*

*Ward* thus explained that "[t]he inquiry is whether the defendant should reasonably anticipate injury to those entrants on his premises who are generally exercising reasonable care for their own safety, but who may reasonably be expected to be distracted, as when carrying large bundles, *or forgetful of the condition after having momentarily encountered it*." (Emphasis added.) *Id.* at 152.

¶ 49     Applying these principles to *Ward*'s facts, the supreme court reversed the appellate court and upheld the plaintiff's jury verdict. The supreme court acknowledged that the concrete post was "not a hidden danger," and that the "plaintiff walked past the post when entering the store and admitted he was at least 'subconsciously' aware of its presence." *Id.* at 152-53. Nevertheless, these facts did not relieve the defendant of its duty, because

> "it was reasonably foreseeable that a customer would collide with the post while exiting defendant's store carrying merchandise which could obscure [his] view of the post. *** Defendant had reason to anticipate that customers shopping in the store would, even in the exercise of reasonable care, momentarily forget the presence of the posts which they may have previously encountered by entering through the customer entrance door. It was also reasonably foreseeable that a customer carrying a large item which he had purchased in the store might be distracted and fail to see the post upon exiting through the door." *Id.* at 153-54.

In finding that the defendant owed a duty, the supreme court noted that it was "reasonably foreseeable that a customer might be injured by colliding with the post" and that "the magnitude of the burden on defendant" to protect customers from this risk was "slight." *Id.* at 156.

¶ 50     *Ward* thus "recognize[d] that there may be certain conditions which, although they may be loosely characterized as 'known' or 'obvious' to customers, may not in themselves satisfy defendant's duty of reasonable care. If the defendant may reasonably be expected to anticipate that even those customers in the general exercise of ordinary care will fail to avoid the risk because they are distracted or momentarily forgetful, then his duty may extend to the risk

- 10 -

posed by the condition." *Id.* At the same time, *Ward* recognized that it remains the province of a jury to decide whether any "additional precautions were required to satisfy the defendant's duty," as well as to decide whether the plaintiff was contributorily negligent. *Id.* at 156-57.

¶ 51     We agree with Henderson that *Ward* is instructive under the facts of the instant case. That is, we conclude that the defendants' duty was not eliminated by the evidence that the dangerous slippery-when-wet condition was "known" to Henderson because it was still reasonably foreseeable that he might momentarily forget that condition and suffer injury.

¶ 52     We acknowledge Henderson's testimony that, between the completion of the epoxy work sometime in 2008 and his October 2009 injury, he slipped in the same area on two occasions and expressed his concerns about the condition to Popke and Pierce. In this sense, the slippery-when-wet condition was generally "known" to him. However, we also must take into account the testimony that (1) he walked across the same area on a daily basis to enter and exit the condominium, where he resided for years before his injury; (2) the entrance was not slippery when it was not wet; (3) the slippery-when-wet condition was not "etched in [Henderson's] mind" and he simply was not thinking about it on the evening of the incident.

¶ 53     In this sense, Henderson's prior knowledge of the hazard is analogous to the situation in *Ward*, implicating the "distraction or forgetfulness" exception to the open and obvious doctrine. In *Ward*, the plaintiff's "subconscious" awareness of the posts did not excuse the defendant's duty because it was foreseeable that he would be momentarily distracted or forget about the hazard. *Ward* illustrates that duty may exist if " 'there is reason to expect that the invitee's attention will be distracted *** or *that after a lapse of time he may forget the existence of the condition, even though he has discovered it*' " on a prior occasion. (Emphasis added.) *Id.* at 149 (quoting Prosser and Keeton on the Law of Torts § 61, at 427 (W. Page Keeton *et al.* eds., 5th ed. 1984)).

¶ 54     This reasoning applies to this case. In our view, it is entirely foreseeable that Henderson, who customarily used the front entrance to come and go from his residence, might momentarily forget that the area near the entrance was slippery when wet. Although he had slipped on two occasions since the epoxy work was completed the previous year, it was reasonably foreseeable that the potential hazard would not be "etched" in his mind in October 2009 and that he might use the front entrance on a rainy evening without remembering the slippery-when-wet condition.[2]

¶ 55     We thus conclude that the "forgetfulness or distraction" exception to the open and obvious doctrine applies. *Bucheleres*, 171 Ill. 2d at 451. In turn, this determination informs the analysis of the four factors in the duty inquiry: (1) the reasonable foreseeabilty of the injury, (2) the likelihood of injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing the burden on the defendant. *Bruns*, 2014 IL 116998, ¶ 14.

> "Where an exception to the open and obvious rule applies, the outcome of the duty analysis with respect to the first two factors is 'reversed.' [Citation.] Whereas operation of the open and obvious rule negatively impacts the foreseeability and likelihood of injury, application of an exception to the rule positively impacts the foreseeability and likelihood of injury." *Id.* ¶ 20.

---

[2]We further note that both Henderson and Popke testified that the slippery-when-wet condition was brought to Pierce's attention. It is reasonable to assume that the reason for doing so was to get it corrected.

Accordingly, the first and second factors weigh in favor of imposing a duty of care upon the defendants: as discussed above, it was reasonably foreseeable and sufficiently likely that a resident in Henderson's circumstances would suffer injury from the slippery-when-wet condition.

¶ 56      We also find that the remaining factors in the duty analysis—the "magnitude of the burden of guarding against the injury" and "the consequences of placing that burden on the defendant"—clearly favor imposing a duty on the defendants to guard against the condition in this case. Significantly, there is undisputed evidence that the defendants authorized, planned, and executed the 2008 epoxy work on the front porch and stoop of the condominium. PSI's employee, Pierce, testified that he signed BMS's proposal for the epoxy work in his capacity as the Lofts' agent. That proposal specifically called for epoxy work at Popke's condominium at a cost of $848. Moreover, Pierce testified that he received complaints about the slipperiness of the epoxy coating after BMS completed its work, and that he communicated them to BMS. As the defendants undertook the work that allegedly caused the dangerous condition, we cannot say that the "magnitude of the burden" to guard against the condition would be too great to impose that duty upon them. Likewise, as the defendants carried out the work, they were in the best position to identify and guard against any hazardous condition resulting from that work. Thus, the final factor, the "consequences of placing that burden on the defendant[s]," also weighs in favor of imposing duty on the defendants.

¶ 57      We thus disagree with the trial court and conclude that the defendants owed Henderson a duty of reasonable care under the common law, notwithstanding the open and obvious doctrine. In turn, we find that genuine issues of material fact exist as to whether the defendants breached their duty of care and whether any such breach proximately caused Henderson's alleged injuries.[3]

¶ 58      As reversal of summary judgment is warranted on this basis, we need not analyze Henderson's alternative arguments for reversal, including his claim that the Lofts independently owed him a duty to maintain the area in question under section 18.4 of the Act (765 ILCS 605/18.4 (West 2010)) and the terms of the Lofts' condominium declaration, or that PSI and BMS independently owed duties of care under their respective contracts. Similarly, as we conclude that an exception to the open and obvious rule applied, we need not separately address Henderson's claim that the rule cannot benefit BMS because it did not own or occupy the property. See *Garest v. Booth*, 2014 IL App (1st) 121845, ¶¶ 29-32 (construction contractor who completed work years before plaintiff's accident and did not "possess, control, or manage the building" could not invoke the "open and obvious doctrine").

¶ 59      For the foregoing reasons, we reverse the order of the circuit court, to the extent that it granted summary judgment in favor of the three defendants: Lofts, PSI, and BMS.

¶ 60      We proceed to address Popke's brief to our court in which she claims that we must affirm the trial court to the extent that it granted Popke summary judgment with respect to BMS's contribution claim against her. Popke first asserts that we lack jurisdiction to disturb that

---

[3]We note that our decision on the issue of duty does not preclude a fact finder from determining that Henderson's negligence contributed to his injuries, which may reduce any recoverable damages. See *Ward*, 136 Ill. 2d at 156-57; *Bucheleres*, 171 Ill. 2d at 447 ("The existence of a defendant's legal duty is separate and distinct from the issue of a plaintiff's contributory negligence and the parties' comparative fault.").

portion of the order because BMS failed to file a notice of cross-appeal. Separately, she argues that she cannot be liable for contribution because, under the open and obvious doctrine, she had no duty to maintain the area where Henderson was injured.

¶ 61 We first reject Popke's suggestion that we have no jurisdiction to review this portion of the trial court's order. Although BMS did not file a cross-appeal, Henderson's notice of appeal was directed broadly to "the trial court's order of September 16, 2016," and not limited to particular motions or parties. "[T]he notice of appeal is to be liberally construed as a whole." *Jackson v. Retirement Board of the Policemen's Annuity & Benefit Fund*, 293 Ill. App. 3d 694, 698 (1997). As the notice of appeal was directed to the *entirety* of the September 2016 order, this court has jurisdiction to review all aspects of that order.

¶ 62 Popke otherwise argues that she was entitled to summary judgment based on the same "open and obvious" argument asserted by the defendants. We reject her reliance on the doctrine for the same reasons we decline to find it applicable with respect to the Lofts, PSI, and BMS. Nonetheless, we can affirm the trial court's grant of summary judgment on any basis apparent in the record, regardless of whether the trial court relied on that basis. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006). We find that, independent of the "open and obvious" doctrine, Popke did not owe a duty to maintain the area where Henderson was injured. As a result, she was entitled to summary judgment with respect to BMS's contribution claim.

¶ 63 First, the four factors in the common law duty analysis do *not* support imposing a duty of care upon Popke under the circumstances of this case. As we have already discussed, it is undisputed that Lofts, PSI, and BMS planned and conducted the epoxy work, and that they responded to homeowner complaints of slipperiness. On the other hand, there is zero evidence that Popke had any prior knowledge or control of the epoxy work, or that she was otherwise in a position to remedy the slippery condition. Under the circumstances, we will not impose any common law duty on Popke to guard against or remedy the slippery condition that other parties indisputably created.

¶ 64 Moreover, the record evidence otherwise makes clear that the area of Henderson's injury was a "common element" under section 18.4(a) of the Act, meaning that the Lofts was statutorily obligated to provide for its "care, upkeep, maintenance, replacement and improvement." 765 ILCS 605/18.4(a) (West 2010); see also 765 ILCS 605/2(e) (West 2010) (defining " 'Common Elements' " to mean "all portions of the property except the units, including limited common elements unless otherwise specified"). Significantly, Pierce, an agent of the Lofts, agreed that the step and stoop at the front entrance were common elements that were the responsibility of the Lofts and that the Lofts retained PSI to manage the maintenance of those common areas. Accordingly, BMS could not establish that Popke breached a duty to maintain the area in question as necessary to support its contribution claim. Thus, we affirm the trial court order only to the extent that it granted Popke's motion for summary judgment with respect to BMS's contribution claim against her.

¶ 65 For the foregoing reasons, we reverse the order of the circuit court to the extent that it granted the summary judgment motions of the Lofts, PSI, and BMS; affirm the order to the extent that it granted Popke's motion for summary judgment with respect to BMS's contribution claim against her; and remand this case to the circuit court for further proceedings consistent with this opinion.

¶ 66    Affirmed in part and reversed in part; cause remanded.