2022 IL App (1st) 211287-U
No. 1-21-1287
Order filed November 28, 2022

First Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| MICHAEL MCGUIRE, | ) | Appeal from the |
| | ) | Circuit Court of |
| | ) | Cook County. |
| Petitioner-Appellant, | ) | |
| | ) | No. 20 CH 5407 |
| v. | ) | |
| | ) | |
| COURT OF CLAIMS OF THE STATE OF ILLINOIS, | ) | Honorable |
| | ) | Anna H. Demacopoulos, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE HYMAN delivered the judgment of the court.
Presiding Justice Lavin concurred in the judgment.
Justice Pucinski specially concurred.

### ORDER

¶ 1    *Held*:    Summary judgment for Court of Claims affirmed; petitioner received due process and circuit court lacked jurisdiction to address the merits of the Court of Claims' decision.

¶ 2    Michael McGuire, a former prison inmate, sued the State of Illinois in the Court of Claims for false imprisonment and negligent incarceration. McGuire had requested to serve his parole year at his mother's home, but a Department of Corrections parole agent denied the request

after deciding the house was too close to a camp with children's programming. After McGuire served his parole in prison, he sued the parole agent in federal court, alleging violations of the eighth and fourteenth amendments of the United States Constitution. He also sued for damages in the Court of Claims. The federal court entered summary judgment against McGuire, finding he failed to show the parole agent acted with deliberate indifference. In a footnote, the opinion commented, "[N]othing in this opinion would prevent [McGuire] from bringing a state law wrongful imprisonment or negligence claim against [the parole agent] in state court if such a claim is not time-barred."

¶ 3 The State moved to dismiss McGuire's Court of Claims complaint, arguing collateral estoppel. The Court of Claims agreed and dismissed his complaint. McGuire filed a petition for a writ of *certiorari* in the circuit court, claiming the Court of Claims deprived him of due process and asking the Court of Claims be ordered to address his claims on the merits. The circuit court granted summary judgment for the Court of Claims, finding McGuire received due process and it lacked jurisdiction to consider the merits of the Court of Claims' decision. We agree with the circuit court and affirm.

¶ 4 Background

¶ 5 In 2015, McGuire was in the custody of the Illinois Department of Corrections when he became eligible for mandatory supervised release (MSR or parole). Because of the nature of his conviction, McGuire had to register as a sex offender and meet the MSR placement restrictions in section 11-9.3(b-10) of the Criminal Code. That section precluded him from residing within 500 feet of facilities "providing programs or services exclusively directed toward persons under 18 years of age." 730 ILCS 5/11-9.3(b-10) (West 2020). McGuire could not begin serving his MSR outside prison until the DOC approved a home site.

¶ 6        McGuire submitted his mother's home for MSR placement. After an investigation, Michael Sturch, a IDOC parole agent, determined his mother's house ineligible due to its proximity to a camp that offered youth programming. McGuire remained in prison.

¶ 7        After his release, McGuire registered as a sex offender with the McHenry County Sherriff's Office and, after its approval, lived in his mother's home. Believing Sturch erred in denying his request to be paroled to his mother's house, McGuire sued in the Court of Claims against the State of Illinois, seeking damages for false imprisonment and negligent incarceration. McGuire also sued Sturch in federal district court under 42 U.S.C. § 1983 (West 2020), alleging violations under the eight and fourteenth Amendments of the U.S. Constitution. The Court of Claims continued McGuire's case until the federal court issued a final disposition.

¶ 8        In the federal case, the court granted Sturch's motion for summary judgment. The court accepted McGuire's contention that the camp was more than 500 feet from his mother's home—516.85 feet—according to a report from a geology professor retained by McGuire. But, after explaining Sturch's methodology for calculating the distance, the court concluded McGuire failed to show Sturch acted with deliberate indifference under the eight amendment.

¶ 9        Further, the court determined that, even if McGuire presented sufficient evidence of deliberate indifference, the doctrine of qualified immunity barred his claim because McGuire could not show he had established a right to have a potential host site evaluated under his methodology. In a footnote, the court added, "That said, nothing in this opinion would prevent [McGuire] from bringing a state law wrongful imprisonment or negligence claim against [Sturch] in state court if such a claim is not time-barred."

¶ 10       Back before the Court of Claims, McGuire amended his complaint, realleging false imprisonment and negligent incarceration. The State moved to dismiss, arguing collateral

estoppel based on the federal court judgment. The State argued that the elements of collateral estoppel had been met: (i) a prior adjudication encompassing an identical issue, here, the propriety of Sturch's decision to deny McGuire's requested MSR site, (ii) resulting in final judgment on the merits, and (iii) involving the same parties or ones in privity.

¶ 11    In response, McGuire asserted that the issues differed materially, as the federal court resolved constitutional claims, not state tort claims. Also, the federal court expressly stated that its ruling did not prevent him from bringing state tort claims.

¶ 12    The Court of Claims dismissed McGuire's amended complaint with prejudice on collateral estoppel grounds. The order, mirroring the State's proposed order, noted the federal court had decided Sturch "acted under state law, followed state law procedures, and made a good faith effort in denying the Claimant's proposed house site." In reviewing the elements of collateral estoppel, the Court of Claims agreed with the State that "[i]n this case, the ultimate issue, the propriety of Mr. Sturch's denial of the MSR site, [was] identical, there was a final judgment, and the parties [were] identical." The Court of Claims also denied McGuire's petition for rehearing.

¶ 13    McGuire filed a petition for a writ of *certiorari* asking the circuit court to order the Court of Claims to hear his claims on the merits. McGuire argued the Court of Claims deprived him of due process under the United States and Illinois Constitutions when it granted summary judgment without addressing the merits. Further, McGuire asserted the Court of Claims failed to follow the federal court's footnote regarding McGuire bringing his state law claims in state court. He also asked the circuit court to order the Court of Claims to promulgate an administrative regulation providing for judicial review of its decisions.

¶ 14    The Court of Claims filed a combined motion to dismiss under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2020)). Despite characterizing his claim as one for due process, the Court of Claims argued McGuire challenged the correctness of its dismissal order, a matter not within the circuit court's subject matter jurisdiction.

¶ 15    The circuit court struck McGuire's request to direct the Court of Claims to adopt a regulation authorizing judicial review of the merits. Otherwise, it denied the motion to dismiss, finding that before rendering a decision, it needed to review the full record of the Court of Claims proceedings. After reviewing the record, the circuit court heard argument on the parties' cross motions for summary judgment. McGuire reiterated that the Court of Claims deprived him of due process by not ruling on the merits and had failed to follow the federal court's footnote. Alternatively, McGuire argued that the Court of Claims' application of collateral estoppel was so "unreasonable and arbitrary" that it amounted to a due process violation.

¶ 16    The Court of Claims responded that it had provided McGuire with due process, as he had multiple opportunities to be heard. Further, the federal court's footnote did not address collateral estoppel or transform its dismissal into a due process violation. Rather, McGuire disagreed with its collateral estoppel analysis, which, at most, amounted to complaining that it misapplied the law and, thus, was not subject to *certiorari* review.

¶ 17    The circuit court agreed with the Court of Claims and orally granted summary judgment for it, stating,

> "The question of law here is: Has there been a violation of due process before the Court of Claims? I do not believe that there has been a violation of due process; in other words, that Mr. McGuire was granted process, we just don't like the outcome. And even if

I were to disagree with the Court of Claims, I cannot grant a judgment, nor can I — there would be nothing for me to do. I can't send it back and order them to hear the case. I would be then sitting as a court of appeals for the Court of Claims, which I am not allowed to do."

¶ 18                                                Analysis

¶ 19        McGuire contends the Court of Claims denied his constitutional rights to due process by (i) refusing to address the merits despite the federal court's footnote and (ii) entering a ruling that was unreasonable and arbitrary with no basis in law or fact.

¶ 20                                        Standard of Review

¶ 21        We review a trial court's grant of summary judgment *de novo*. *Argonaut Midwest Insurance Co. v. Morales*, 2014 IL App (1st) 130745, ¶ 14. For summary judgment, the movant must show (i) no material fact issue exists and (ii) entitlement to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). Where the parties have filed cross-motions for summary judgment, as here, they agree no genuine issue of material fact exists and invite the court to decide the question of law based on the record. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28. This court may affirm on any basis appearing in the record, regardless of the circuit court's reasoning. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006).

¶ 22                                          Due Process

¶ 23        The Court of Claims, established by the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2020), is not a "court" within the meaning of article VI of the Illinois Constitution of 1970. Instead, the Court of Claims serves as a fact-finding body of limited jurisdiction that hears claims against the State, including tort claims. *Rossetti Contracting Co. v. Court of Claims*, 109 Ill. 2d 72, 78-80 (1985). Court of Claims' decisions are not subject to external judicial review, except for a writ of *certiorari* in the circuit court alleging the Court of Claims deprived

a party of due process. *Id*. at 78-79. "Requirements of due process are met by [a tribunal] conducting an orderly proceeding in which a party receives adequate notice and an opportunity to be heard." *Reichert v. Court of Claims*, 203 Ill. 2d 257, 261 (2003). A writ of *certiorari*, however, "may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Id.*

¶ 24    Relying primarily on *Rossetti*, McGuire argues the circuit court erred in refusing to order the Court of Claims address the merits of his claims. Rossetti, a subcontractor, had entered into an agreement with the Illinois Department of Transportation. *Rossetti*, 109 Ill. 2d at 74. A dispute arose, and the general contractor brought suit in the Court of Claims for money under the contract, including money owed to Rossetti. *Id*. The Department of Transportation asserted that the general contractor had engaged in fraud, an affirmative defense under section 14 of the Court of Claims Act. *Id*. at 75. Rossetti sought to intervene, arguing the State had no evidence of fraud on his part. *Id*. Without explanation, the Court of Claims denied Rossetti's petition. *Id*. Later, the Court of Claims granted summary judgment for the Department of Transportation and dismissed the general contractor's claim entirely. *Id.*

¶ 25    Rosetti filed a petition for a writ of *certiorari* in the circuit court. That court found a manifest injustice when the Court of Claims denied Rosetti a right to present his claim. *Id.* at 76. Nevertheless, the circuit court concluded it lacked jurisdiction and denied the petition. *Id*.

¶ 26    The supreme court disagreed, holding a writ of *certiorari* as the appropriate vehicle for determining whether the Court of Claims had acted in a manner that unconstitutionally deprived a party of its right to due process. *Id*. at 78. "It is a basic tenet of constitutional law that an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Id*. In remanding to the Court of Claims, the court noted, "In deciding that *certiorari* was

appropriate under the rare set of circumstances in the instant case, we do not now hold that *certiorari* would be available to review the correctness of any decision of the Court of Claims based on the merits of an appeal." *Id*. at 80.

¶ 27    McGuire contends that, like the plaintiff in *Rossetti*, he seeks to be heard by the Court of Claims. But unlike Rossetti, whose motion to intervene was denied, McGuire participated and argued in the Court of Claims against the merits of the motion to dismiss. And the circuit court reviewed the record of proceedings, which established that McGuire received a meaningful opportunity to be heard, unlike Rossetti.

¶ 28    Although factually distinguishable, *Reyes v. Court of Claims,* 299 Ill. App. 3d 1097 (1998) is instructive. There, the court explained that due process does not guarantee against erroneous or unjust decisions, and an error in a judgment or a misconstruction of the law does not raise a constitutional question. *Id*. at 1105. In *Reyes*, the plaintiff brought a medical malpractice claim against the Board of Trustees of the University of Illinois Hospital, which the Court of Claims dismissed as untimely. The circuit court reversed, finding the plaintiff filed the claim timely. The appellate court reversed the circuit court on the grounds that the circuit court lacked jurisdiction to reverse because the Court of Claims had satisfied plaintiff's due process rights. *Id*. at 1106. The court noted that the "requirement of due process is met by having an orderly proceeding wherein a person is served with notice, actual or constructive, and has an opportunity to be heard and to enforce and protect his rights." *Id*. at 1104.

¶ 29    Like the plaintiff in *Reyes*, McGuire had notice, filed a memorandum, and had an opportunity to argue. In addition, the Court of Claims considered McGuire's arguments and petition for rehearing. Thus, the Court of Claims allowed McGuire an opportunity to be heard, which is sufficient to satisfy due process. *Id*. at 1104. See also *Krozel v. Court of Claims*, 2017

IL App (1st) 162068, ¶ 22 ("unlike the subcontractor in *Rossetti*, who never had the opportunity to intervene or present any argument, plaintiff here had multiple opportunities to be heard on the limitations issue, which satisfies due process concerns under these circumstances"); *Hastings v. State*, 2015 IL App (5th) 130527, ¶ 22 (Court of Claims proceedings satisfied due process where plaintiff, among other things, responded to defendant's summary judgment motion with "memorandum of law that included citations to relevant case law and statutes as well as legal arguments and analysis"). As the circuit court judge observed, even if she disagreed on the question of collateral estoppel, she lacked authority as long as the Court of Claims afforded McGuire due process. *Reichert*, 203 Ill. 2d at 261 (writ of *certiorari* "may not be used to review the correctness of a decision by the Court of Claims").

¶ 30    The circuit court correctly denied the plaintiff's petition for a writ of *certiorari*.

¶ 31                         Federal Court Footnote

¶ 32    We also reject McGuire's contention that the Court of Claims denied him due process by refusing to defer to the federal court's footnote. McGuire asserts the footnote prevents the Court of Claims from relying on collateral estoppel to dismiss his claims. Not so.

¶ 33    While the federal court's decision does not prevent McGuire from bringing timely a state law claim, nowhere does it *decide* whether McGuire's claims might be barred by collateral estoppel or other reasons. Essentially, McGuire attempts to amplify a gratuitous footnote into a legally-binding pronouncement. Nor does McGuire cite a case holding that a federal court may preemptively determine the preclusive effect of its decisions. Indeed, the cases he cites stand for the unremarkable proposition that federal common law determines the preclusive effect of a federal court judgment. See *Semtek International Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507 (2001); *National Union Fire Insurance Co. v. DiMucci*, 2015 IL App (1st)

122725, ¶ 30. Even assuming the Court of Claims failed to use federal preclusion principles, that type of legal error does not constitute a due process violation. *Reichert*, 203 Ill. 2d at 261.

¶ 34    McGuire maintains that the Court of Claim's made an irrational decision in light of the footnote. According to McGuire, the circuit court has jurisdiction to review a Court of Claims decision that is unreasonable, arbitrary, and without basis in law or fact, relying on *Estate of Pessin v. State*, 302 Ill. App. 3d 417 (1999). In *Pessin*, the plaintiff sued the State, alleging negligence in the design and construction of the roadway, as well as failure to warn of the dangerous condition and to restrict speed. After a hearing at which two experts testified, the Court of Claims dismissed the complaint. The plaintiff filed a petition for a writ of *certiorari*, which the circuit court dismissed. *Estate of Pessin,* 302 Ill. App. 3d at 419.

¶ 35    The appellate court reversed and remanded after finding the circuit court should have reviewed the record of the Court of Claims proceeding before determining the plaintiff had not been denied due process. "Without reviewing the record at issue, the trial court cannot possibly determine whether or not the Court of Claims' decision was totally unreasonable and arbitrary with no factual or legal basis." *Id*. at 420. McGuire argues this language permits the circuit court to review the merits.

¶ 36    Notably, McGuire's interpretation of *Pessin* conflicts with *Reichert*, decided five years later. *Reichert* controls and explains that a writ of *certiorari* "may not be used to review the correctness of a decision by the Court of Claims based upon the merits of the case before it." *Reichert*. 203 Ill. 2d at 261.

¶ 37    Affirmed.

¶ 38    Justice Pucinski, specially concurring.

¶ 39    I regretfully concur in the decision of the majority because it appears that under the laws and precedents now in place there is no other choice available.

¶ 40    However, it isn't right that justice and the law are not always in the same universe.

¶ 41    Here, the Parole Office does have a manual for determining whether or not the soon-to-be-released defendant can live at the address on his after-release application. The manual is not in the record and does not appear to be on the IDOC website, at least I cannot find it.

¶ 42    Because I cannot read the manual I have only the references in the record to the work of the Parole Officer that he did a site check, looked at the tree lines, looked at Google maps and determined that the defendant's mother's house was too close to a camp that offered services to children. The use of a tree line and Google maps might be perfectly within the directives of the manual, but they appear to me to be very loose given that a man's liberty interest was at stake. In this situation the two properties were less than 30 feet apart at the nearest point. Later, a local Sheriff determined that the two properties were not, in fact, too close together.

¶ 43    If we are to value a person's liberty interest at all, then it seems we could do a better job at determining, especially in close cases, where exactly the property lines are. Tree lines are not property lines. Google maps do not show property lines. Townships, and most cities have a set of Maps and Plats that do show property lines. Surveyors, though expensive, are the experts on property lines.

¶ 44    Are we so overwhelmed as a society that a man's liberty interest is not worth the cost of a surveyor, especially given that this defendant's extra year in prison was an expense in itself? If objective, expert standards had been used we all would have known the exact facts of these property lines. Instead, we have guesswork. It is wrong.